## SPENCER v. INDUSTRIAL COMMISSION et al.

No. 5503.  Decided January 10, 1935.  (40 P. [2d] 188.)

338

For opinion on rehearing, see 87 U. 358, 48 P. (2d) 1120.

*P. G. Ellis*, of Salt Lake City, for plaintiff.

*Joseph Chez*, Atty. Gen., and *Paul H. Ray*, of Salt Lake City, for defendants.

MOFFAT, Justice.

This is the second time this case has been before this court for review of an order of the Industrial Commission of Utah denying compensation to the plaintiff, Glen Spencer, for an alleged injury while in the employ of the state road commission. The former opinion of this court is reported in 81 Utah 511, 20 P. (2d) 618, and was decided

April 5, 1933, or one year after the time of the alleged injury.

Under date of April 19, 1932, the applicant, Glen Spencer, filed an application for compensation under the provisions of the Workmen's Compensation Act. (Rev. St. 1933, 42-1-1 et seq.). On May 19, 1933, and after the former decision of this court, the applicant filed an amended or supplemental petition. Other than matters of detail or elaboration, in so far as anything new or necessary to call the attention of the Industrial Commission to the injury or invoke its jurisdiction, there is no substantial difference in the petitions. Considerable attention is devoted to an attempt either to prove, disprove, or render uncertain the exact date upon which the applicant received the alleged injury. We may advert to that matter later.

In substance, the applicant, Glen Spencer, alleged that, while employed by the state road commission at or near Farmington in Davis county during the week ending April 9, 1932 (the exact day being uncertain), he was injured by an accident arising out of or in the course of his employment.

"While applicant was attempting to dump a four-horse loaded scraper, a duty of said employment, the said scraper caught on a submerged root or other object in the ground, which checked or arrested the forward motion of said scraper, preventing the dumping thereof, and caused the same to fall or come backward so that the Johnson bar thereof fell or struck heavily upon the applicant's shoulder, forcing or pushing him downward into a stooping or crouching position. Thereby he sustained an injury to his back, hip and sacro-iliac joint, and he was rendered thereby incapable of performing any physical labor or duties of his employment, and unable to earn any wages, and that he was thereby permanently and totally incapacitated and prevented from obtaining employment and from performing labor and earning a livelihood."

After several hearings upon the matter before the Industrial Commission and after the former decision and a further hearing, the matter is again before the court upon a writ of review. At the last hearing and after all the evi-

dence sought to be presented had been heard by the Industrial Commission, the following findings and decision were made by the commission:

"I. The applicant, Glen Spencer, claims that on or about the 5th day of April, 1932, while in the course of his employment as an employee of the State Road Commission of the State of Utah, he suffered an accidental injury resulting in a sprain of his right sacro-iliac joint, with accompanying loss of bodily function and disability, which bodily function and disability said Glen Spencer claims to be total and permanent.

"II. The Commission finds that on or about the 5th day of February, 1927, while in the employ of Davis-Howe & Company, a corporation, said Glen Spencer suffered an accidental injury arising out of or in the course of his employment, resulting in loss of bodily function and disability; that at said time the State Insurance Fund carried the Compensation Insurance for Davis-Howe & Company and assumed liability for compensation to the said Glen Spencer for the said accident; that the State Insurance Fund paid Glen Spencer compensation for total temporary disability on account of said injury in the sum of $578.74, and also paid hospital and medical expenses on account of said injury in the sum of $575.68; that thereafter Glen Spencer and the State Insurance Fund entered in an agreement of compromise and settlement of said claim whereby it was agreed that Glen Spencer had suffered a permanent partial loss of bodily function amounting to 51½% of his bodily function, and for such loss Glen Spencer accepted 103 weeks' compensation, amounting to the sum of $1,508.53. This amount was in addition to the compensation paid on account of temporary total disability.

"III. The Commission further finds that after said accident and injury, and after settlement and compromise of said claim, Glen Spencer returned to his employment with Davis-Howe & Company where he again suffered an accident arising out of or in the course of his employment on the 16th day of January, 1930; that the accident to said Spencer on the 16th day of January, 1930, consisted of a sprain of the right sacro-iliac joint; that on said 16th day of January, 1930, the State Insurance Fund carried the Compensation insurance for Davis-Howe & Company, and again assumed liability for compensation due to Spencer on account of said injury; that the State Insurance Fund paid compensation to said Spencer for temporary total disability in the sum of $1,223.65; and paid on account of hospital and medical attention resulting from said injury the sum of $849.55. Therefore the said Glen Spencer claimed that he had suffered a partial permanent

loss of bodily function as a result of said injury of January 16th, 1930, and he and the State Insurance Fund entered into a compromise and settlement of said claim as a result of which the State Insurance Fund paid, and the said Glen Spencer received and accepted the sum of $746.92, or 50 weeks' compensation, representing an agreed permanent partial loss of bodily function of 25%.

"IV. The Commission finds as a result of said injuries of February 5th, 1927 and January 16th, 1930, Glen Spencer has claimed and been paid for a permanent partial loss of bodily function amounting to 76½% of his total bodily function.

"V. The Commission further finds that said Glen Spencer went to work for the State Road Commission on April 4th, 1932. At that time Spencer had an impaired right sacro-iliac joint, such impairment being the same for which he had theretofore been fully compensated. Said impairment, while still present to some extent when Spencer went to work for the Road Commission, did not greatly interfere with Spencer in walking and moving about in his ordinary occupation of looking after his small farm, but the Commission finds that upon taking employment with the Road Commission he continued working at heavy manual labor from the 4th day of April, 1932, until the 9th day of April, 1932; that as he continued to subject himself to the heavy exertion of such work the weakness in his right sacro-iliac joint gradually began to manifest itself and as the result of the cumulative effect of exertions made from day to day between April 4, 1932 and April 9th, 1932 and not otherwise, the weakness in his sacro-iliac joint recurred to the extent that he was no longer able to continue his work.

"Spencer claims that he suffered a distinct accident while in the employ of the Road Commission. In his sworn application for compensation Spencer asserted he was injured by 'being violently jerked, wrenched and thrown by the Johnson bar' etc., while on the witness stand he said he was injured, not by being jerked or thrown, but by being forced by the weight of the bar into a crouching position. In this connection the Commission finds that Spencer did encounter some difficulty in unloading a particular scraper on April 5th, 1932 at which time he was required to ask for help from some fellow workmen; but the Commission finds that Spencer continued at the same heavy work the balance of that day and for a day or two after that when his work was changed to that of loading scrapers.

"The Commission finds that if Spencer had suffered the injury he claims to have suffered, he could not have pursued his work as he did and he would not have delayed his visit to the doctor until the night of April 8th, 1932.

"The Commission finds that Spencer did not suffer any accident or single occurrence which either produced a new injury to his sacro-iliac joint or a recurrence of an old injury.

"The Commission finds that whereas Spencer has heretofore been fully compensated for permanent loss of bodily function amounting to 76½% of his total bodily function, he was not, at the time of the hearing of this case, suffering from any loss of bodily function, permanent or otherwise, in excess of 25%. He has already been paid, upon the order of this Commission, for 25% loss of bodily function for specific injury to his right sacro-iliac joint and inasmuch as his loss of function at present is related to that joint, and inasmuch as the Commission finds that his present loss of function does not exceed 25% from all causes, it is found that Spencer is not now suffering any loss of function or disability for which he has not already been fully compensated.

"VI. The Commission further finds that the opinion of the medical experts as to applicant's condition is all based upon subjective symptoms.

"VII. The Commission has had frequent occasion to see and observe the applicant and finds that such disability as applicant now suffers is not the result of any accident arising out of or in the course of his employment with the State Road Commission during the month of April, 1932. On the contrary, the Commission finds that such disability as he now suffers is the result of an old injury, occurring on or about the 16th day of January, 1930, and the accumulated effect of labor performed by applicant since the month of May, 1931."

From the findings thus made, the Industrial Commission concluded that the "applicant is not entitled to recover compensation," and denied applicant's claim; two members of the commission rendering the decision and one dissenting therefrom.

Counsel for both sides to this controversy have elaborately and in detail discussed the evidence and cited numerous authorities upon the various propositions and situations argued. There is much space in the briefs of both sides devoted to some collateral questions, which we need not discuss here. The single material question before us is: Is there sufficient material competent evidence in the record to support the findings? The plaintiff divides the

problem into ten different statements relating to the matters considered, which, in final analysis, amount to the single proposition stated. The defendants submit the question as to whether the commission was justified in denying compensation to Spencer, while the plaintiff states the proposition that, when there is any tangible or reasonable evidence to support a finding of the Industrial Commission, this court will not overthrow it.

There are two sections of the statute and numerous cases that settle the question. The fact is that many, probably most, of the cases that come to this court from the Industrial Commission for review relate to that single question. While the language may vary slightly ■ in the numerous cases heretofore decided, the language most frequently found in the decided cases is that an order of the commission granting an award will not be disturbed if there is any substantial competent evidence to support the award; and this court will not disturb an order of the Industrial Commission denying or refusing to make an award unless the record discloses that the commission has arbitrarily and capriciously refused to consider credible evidence or has acted arbitrarily or capriciously and wholly without cause rejected or refused to give effect to the substantial and competent evidence submitted. An examination of the long list of cases heretofore decided by this court construing sections 42-1-82 and 42-1-79, R. S. Utah 1933, relating to the proposition that the findings and conclusions of the commission on questions of fact are conclusive and final and not subject to review, need not be reviewed. It is not necessary to discuss nor to distinguish the numerous cases. We are, however, on review required to examine the record and determine one of the two propositions above stated.

Findings based upon incompetent or immaterial evidence that in no way bear upon the issues involved are immaterial and surplusage and must be disregarded. ■
*Putnam* v. *Ind. Comm.*, 80 Utah 187, 14 P. (2d) 973.

Finding No. I above quoted is not a finding of fact; it is a statement of what the applicant, Glen Spencer, claims. The so-called finding No. 1 was probably not intended as a finding, although so included and designated. Had the word "finds" been used instead of the word "claims" in finding No. I, no other findings would have been necessary. Such finding would have covered the issues. Finding No. I must therefore be disregarded and treated as though it were not made.

As a matter of history and as an interesting recitation of past injuries and the splendid and effective operation of the Workmen's Compensation Act, findings numbered II and III are excellent examples; but what connection there is between them and the matter presently before the commission it is difficult to determine, or in what way such findings may be applied to the instant case. The fact that Glen Spencer had, in the pursuit of his employment, been heretofore injured, and that under the operation of the law and procedure provided he had been cared for, and in so far as the application of the Workmen's Compensation Act under the administration of the Industrial Commission had or could compensate him for such injuries, is indicative of the efficiency of administration and the effectiveness of the purposes of the law.

There are, however, two stateemnts in those two findings that will require separate treatment. Those statements or findings are: (1) "That Glen Spencer had suffered a permanent partial loss of bodily function amounting to $51\frac{1}{2}\%$ of his bodily function," and (2) "that he had suffered a partial permanent loss of bodily function * * * representing an agreed permanent loss of bodily function of 25%" For both of these stated losses of functional capacity the findings indicate he had been paid. We shall have occasion to discuss this matter later.

Finding No. IV is a summarized statement and arithmetical computation of what is stated in findings numbered II and III, and must therefore be disregarded as a finding.

Finding No. V is divided into five subsections or paragraphs. It is from the language of this finding that it must be determined whether the decision of the Industrial Commission can be affirmed or whether it must be annulled. The finding is lengthy and not easy of analysis by an abbreviated statement. Certain statements in it must be examined separately, not for the purpose of weighing the evidence applicable thereto, but for the purpose of first, discovering what is actually found and, secondly, making application of the law to what is found.

Finding No. VI, to the effect that the commission "finds that the opinion of the medical experts as to applicant's conditions is all based upon subjective symptoms," is not a finding of fact related in any way to the issues of the case. It is in the nature of a conclusion as to the basis or material submitted to the experts from which their opinions were formed. Such a statement may cause one to conjecture as to the weight the commission may be inclined to give to evidence of that character. Matters of that sort are not before us for review, and are immaterial.

Finding No. VII indicates that "the Commission has had frequent occasion to see and observe the applicant" (*and presumptively from such occasions and observations*) "finds that such disability as applicant now suffers is not the result of any accident arising out of or in the course of his employment with the State Road Commission during the month of April, 1932." The commission then in finding VII further finds "that such disability as he (Spencer) now suffers is the results of an old injury occurring on or about the 16th of January, 1930, *and the accumulated effect of labor performed by applicant since the month of May, 1931.*" (Italics added.)

The first part of finding No. VII above quoted presents a situation much like the situation presented to this court when the matter was presented at the former hearing. *Spencer* v. *Ind. Comm.*, 81 Utah 511, 20 P. (2d) 618, 620. There is nothing in the record relating to *"the occasions or*

*observations"* made, when or where or to whom the "opportunities" for such "observations' occurred. While we see no serious objection to the members of the commission making personal observations, obtaining information, or otherwise acquiring knowledge of the facts, yet, when such is done, it is impossible for this court to determine the information or facts upon which a finding such as the one here under consideration is based unless the person having such information or making such observation makes them a part of the record in the proper way.

"Unless such evidence is brought into the case, and in some lawful manner made a part of the record, it cannot be regarded as competent evidence, and must be excluded in determining the sufficiency of the evidence to support the findings of the Industrial Commission." *Spencer* v. *Ind. Comm.*, supra, citing cases.

This does not mean that the commission may not make investigations independently. A hearing before the Industrial Commission is not an adversary proceeding in the nature of a lawsuit as ordinarily understood. In the vast majority of cases, the facts are not the things over which the controversy arises and the facts as such are not involved. It is either a question of law or the application of legal principles to the facts as found or presented or agreed upon. The commission, however, may not, without cause or reason, disregard or refuse to give effect to uncontradicted evidence, nor may the commission, whether it makes findings of fact or not, "arbitrarily or capriciously refuse to believe and to act upon credible evidence which is unquestioned and undisputed." *Kavalinakis* v. *Ind. Comm. et. al.*, 67 Utah 174, 246 P. 698, 700. We are dealing with human beings and human institutions. It is not possible to eliminate the personal equation. Findings are made in words, and words are conventional symbols whereby we attempt to transform the objective impressions into the subtective and in turn express the subjective so as to make it appear objectively or subjectively for further subjective consideration, and thereby come to an understanding of things

sufficiently to make a possible and workable basis for solution of the problem. At best they are only approaches, and can never be absolute. If each given word meant only one thing, was invariable in form and meaning, and each relation was likewise forced to be so characterized, language would be so stiff and unyielding that the fine shades of meaning either gained or lost in transmission, orally or written, would cease to be. It is the constant effort to make what seems clear to one equally clear to another that justifies unremitting toil so to approach a mastery of expression and a clearness of statement that will be, as far as possible, free from uncertainty. "Let us pray."

The latter part of finding No. VII above is closely related to the first paragraph of finding No. V and will be considered therewith. The matters actually found as set forth in the findings, omitting argumentative and hypothetical matters, are as follows:

"That Glen Spencer went to work for the State Road Commission on April 4th, 1932. At that time he had an impaired right sacro-iliac joint. That said impairment * * * did not greatly interfere with Spencer in walking and moving about in his ordinary occupation of looking after his small farm."

"That upon taking employment with the Road Commission he continued working at heavy manual labor from the 4th day of April, 1932 until the 9th day of April, 1932. That as he continued to subject himself to the heavy exertion, the weakness in his right sacro-iliac joint gradually began to manifest itself. That the weakness in his sacro-iliac joint recurred to the extent that *he was no longer able to continue his work.*"

"That Spencer did encounter some difficulty in unloading a particular scraper on April 5th, 1932, at which time he was required to ask for help from some fellow workmen; that he continued at the same heavy work the balance of that day and for a day or two after that when his work was changed."

"The Commission finds that Spencer did not suffer any accident or single occurrence which either produced a new injury to his sacro-iliac joint or a recurrence of an old injury. That Spencer is not suffering *at the time of the hearing* (more than a year after the alleged accident) from any loss of bodily function, permanent or otherwise, in

excess of 25%. That such disability as he now suffers is the result of an old injury occurring on or about the 16th day of January, 1930, and the accumulated effect of labor performed by him since the month of May, 1931." (Parentheses and italics added.)

There are no serious conflicts in the evidence. There are some variations as to time and circumstances, but no apparent conflicts not easily reconcilable. It is both admitted and proved that Glen Spencer began to work for the state road commission on or about the 4th day of April, 1932, and that he worked to and including the 9th day of April, 1932; that the state insurance fund is the insurance carrier; that the applicant at the time of his injury was paid a wage amounting to the sum of $21 per week, working six days per week.

The record in this case impresses the fact that the exact date upon which the injury occurred was considered to be the important question. There are incidents and occasions when the exact time when a happening occurred is the indispensable thing to be determined. Such would be the case if A ceased working for B at 12 o'clock noon and entered employment for C at 12:01 p. m. and was injured by accident at 12:05 p. m. We have no such case before us. In this case the employer was the same, the employee the same, and the insurance carrier the same, and the injury arose out of or in the course of the employment. Whether the accident occurred on the 5th of April or the 8th of April, or on any day between, the employment being continuous, as it is conceded to be, could make no difference.

Dates are the most uncertain things in human memory, except as they are related to events that impress the relationship of the date to some event. The frequency of the questions, "What day of the week is it?" or "what is the date?" are sufficiently indicative. Besides, which of us can tell the date we did a given thing a week or a month ago, unless a record is made from which we may refresh our memory? Except as an event is in some way related to a date so that the relationship is impressed, positiveness or

certainly may be a cause of suspicion; hence we find the expression "on or about" a given time answering the practical or technical search for this time relationship of occurrences. A part of the examination or cross-examination (edited) is typical:

"Q. You got hurt on the 5th, didn't you? A. I don't remember if it was the fifth.

"Q. You got hurt on the 5th of April and worked until the 9th didn't you? A. I think so. I didn't say I got hurt on the 5th of April; I made a mistake on the dates.

"Q. Do you know what day you got hurt? A. No, I couldn't tell you.

"Q. Did you ever know what day you were hurt? A. Only by going to the doctor.

"Q. You are unable to tell whether you got hurt on the 5th? A. No difference whether it was on the 5th. I was working under severe pain in order to stick on the job.

"Q. Did you work these days in severe pain? A. I must have done.

"Q. How many days after you got hurt did you work before you went to see a doctor? A. It seems like I went that night.

"Q. That was on the 8th wasn't it. A. The way he has it."

This brings us now to a consideration of the findings and the evidence as to the accidental injury. The Industrial Commission found:

"That Spencer did not suffer any accident or single occurrence which either produced a new injury to his sacro-iliac joint or a recurrence of an old injury." Paragraph 4, finding V.

"That such disability as he now suffers is the result of an old injury occurring on or about the 16th day of January, 1930, and the accumulated effect of labor performed by applicant since the month of May, 1931." Last part of finding VII.

"That Spencer did encounter a difficulty in unloading a particular scraper on April 5th, 1932 at which time he was required to ask for help from some fellow workman." Part of paragraph 2, finding V.

"That the impaired right sacro-iliac joint * * * did not greatly interfere with Spencer in walking and moving about in his ordinary occupation of looking after his small farm." Part of paragraph 1, finding V.

The following is the undisputed evidence as to the injury and how it occurred: Spencer testified: That the scrapers were loaded by another man. That, as the teams came. around on to the grade, pulling loaded scrapers, it was his duty to dump them. The scrapers were what is known as Fresno scrapers. The one Spencer was attempting to dump at the time was drawn by four horses and had a heavy load on. The dumping is accomplished by taking hold of an iron bar extending to the rear as the scraper is loaded, known as the "Johnson Bar," and lifting it upward, and as the front edge of the scraper is slanted downward by the lifting, the blade digs into the earth or soil and the draft of the horses helps in bringing the scraper up and over in the process of dumping. That at this particular time, because of the heavy load and a root that had got between the scraper and the drawbar, he put his shoulder underneath the Johnson bar to lift it over. That all at once the horses stopped quick and the full weight of the loaded scraper and the force of the large root between the blade of the scraper and the drawbar, acting as a spring against him, he got the full weight of the loaded scraper and the force of the springing root downward upon his shoulder, forcing him down into a stooping and bending position pretty close to the ground. That at that time he felt a lot of severe pain. That other workmen came to help him. That after considerable effort they got the root out and dumped the scraper.

Charles Secrist, another employee on the job was driving a team on another scraper, either just ahead of or just behind the one Spencer had difficulty dumping at the time of the injury. That he was acquainted with Spencer. That he remembered the time Spencer was injured on the road job. That dumping those four-horse scrapers is not a light task. That at that time they were loading the scrapers heavy. That the first thing that brought the matter to his notice was the struggle Spencer was having to dump the scraper. That he saw Spencer raise the bar up as high as he could and get his shoulder under it, and was lifting all

he could when the scraper team stopped. This released the whole weight of the load, and it came back upon him and crushed him right to the ground. That the incident attracted the attention of some of the fellows and they came over and when they got the dirt out they found a green oak brushroot under the blade and up over the drawbar of the scraper. That the root acted like a stiff spring, and, when the horses took their weight off of it, Spencer had not only the weight of the scraper but also the effect of the root. Some one remarked, "Good hell! No wonder you couldn't dump it."

Dr. Byron L. Kesler testified that Spencer came to him on the evening of April 8, 1932. That upon examination he decided that Spencer had a bad sprain of the muscles and ligaments in the region of the sacroiliac joint. That he seemed to be in severe pain. The doctor prescribed treatment. Later, April 10, 1932, Spencer consulted Dr. Sol G. Kahn, who diagnosed the injury substantially as did Dr. Kesler. That it is impossible to state how long it will take for one to recover from such an injury. That, in so far as a cure by an operation is concerned, one may or may not get a favorable result.

Dr. S. C. Baldwin's testimony as to the character of the injury was very much the same as the other doctors. Dr. Baldwin had treated Spencer for a longer time, and at the time of the last hearing before the commission the doctor had put Spencer in a plaster cast, which covers his body from the trochanters or processes of the upper end of the femur bone to the armpits, to take the weight as much as possible from the sacroiliac joint.

We are clearly of the opinion that this evidence admits of but one finding, and that is that Spencer was injured by accident in the course of his employment between the 4th and 9th days of April, 1932, compensable in its nature. We think even the commission fairly so found and then argued itself into a difficult conclusion upon the theory of former payments of compensation for lost bodily function.

Because of certain expressions in the findings relating to so-called percentage losses of bodily function, it is necessary to discuss the problem suggested by those matters stated in the findings. The source of such theory and of the argumentative finding "that whereas Spencer has ▇▇▇▇ heretofore been fully compensated for permanent loss of bodily function amounting to 76½% of his total bodily function," 25 per cent of which is loss of bodily function to his right sacroiliac joint, and support therefor must be discovered otherwise than in the express provisions of the Workmen's Compensation Act. An analytical examination of the ninety-seven sections thereof and the fourteen sections relating to the state insurance fund fails to discover anything in those sections in any way relating to the idea of paying for a workingman's loss of earning power piecemeal and then in the event of a succeeding injury beginning with the fractional part of bodily function thus assumed to be remaining and thereby in case of a few succeeding injuries, although capable of rendering an efficient service and satisfactory to his employer, the employee finds himself paid for 100 per cent or more of his assumed bodily function and therefore having been bought and paid for, he may not further be compensated no matter how serious his injury.

We think such is not the theory nor the purpose of the Workmen's Compensation Act. The instant case is illustrative of the untenableness of such position. Spencer was paid according to the findings for 51½ per cent of loss of bodily function for an accidental injury causing an abdominal hemorrhage. This occurred on the 5th day of February, 1927. Total temporary disability was allowed by the commission for a time; then a lump sum settlement was made for what was denominated a permanent loss of bodily function. Whether nature was kind or medical skill more helpful than may have been expected, or whatever may have been the healing powers we find Spencer "surgically healed" and again engaged in industrial activities. Payment of com-

pensation for an accidental injury arising out of and in the course of industrial employment is in no sense a payment for damages, and the rules respecting the measure of damages in law actions do not apply. For certain injuries the compensation is fixed and arbitrary; for certain others the compensation must be found by the Industrial Commission for such period of compensation as the commission shall deem equitable and in proportion to compensation in other cases. R. S. Utah 1933, 42-1-62; *Broderick* v. *Ind. Comm. et al.*, 63 Utah 210, 224 P. 876.

A case rivaling that of Spencer for misfortune arising out of industrial accidents is that of one John L. Wilson, referred to in the case of *Standard Coal Co.* v. *Ind. Comm. of Utah et al.*, 69 Utah 83, 252 P. 292, 294. In that case it is said:

"He [Wilson] was employed by the Standard Coal Company and it must be presumed that he was capable of earning the wages that he was paid. His right to compensation and the amount thereof are governed under the Workmen's Compensation Law *by the fact of employment, by the wages received, and the further fact of an accidental injury in the course of or arising out of employment.* [Italics added.] The employer is charged with the duty of paying compensation to the injured employee based upon these considerations. That the employee had infirmities or diseases that might and did render him more susceptible to injury resulting from an accident does not relieve the employer from the duty to pay such compensation. *Pinyon Queen Mining Co.* v. *Ind. Comm.*, 59 Utah 402, 204 P. 323; *Tintic Milling Co.* v. *Ind. Comm.*, 60 Utah 14, 206 P. 278, 23 A. L. R. 325."

When dealing with the functions of the human body and injuries thereto, the healing and recuperative powers thereof, the repairing processes of nature, the extent and time thereof, in the very nature of things involve much uncertainty, and no doubt some speculation enters into the consideration of the case, but, when the record discloses undisputed facts, employment, wages, injury, in the course thereof, such matters are controlling.

While opinion evidence of the mathematical proportion or percentage of loss of function of a bodily member or of

the sum total of bodily functions may be helpful to the commission in determining either the amount of the periodical compensation to be paid or the length of time such payment may continue, for partial or total temporary loss of bodily function or for permanent partial loss of bodily function, such evidence is directed to the compensation features and not to physiological deprivation of a fixed and determined permanent loss from an assumed 100 per cent of physiological power such loss is to be subtracted. One whose bodily functions may be estimated to be only 25 per cent of that of a normal healthy physical body may still have an earning capacity in certain industrial activities as great or greater than many who may be regarded as perfect physically, and one perfect physically may have less earning power than one impaired physically but otherwise endowed to fit him for a given employment. Under the Industrial Compensation Act, the powers of the intellect have not yet been indicated as compensable except as they may be evaluated by impairment through loss of physical function.

Thus, whether an employee is totally disabled or permanently disabled are ultimate matters to be decided by the commission, as is also the amount and time compensation may be awarded upon all the evidence. Upon these ultimate questions expert witnesses may not properly express opinions, nor may such opinions relating to loss of bodily function become the measure of compensable function possessed by an employee prior to his injury. *Kelly* v. *Ind. Comm. of Utah*, 80 Utah 73, 12 P. (2d) 1112; *International Coal & Min. Co.* v. *Ind. Comm. et al.*, 293 Ill. 524, 127 N. E. 703, 10 A. L. R. 1010.

A claim for compensation may not be denied because a new injury "lighted up, reopened, or revived an existing infirmity of the injured employee." No standard of health or physical fitness for an employment is prescribed by our statute to entitle an employee to compensation for an injury arising by accident out of or in the course of his employment. Apparently when one enters an em-

ployment the employer takes the employee as he is. Such is the rule laid down in the case of *Standard Coal Co.* v. *Ind. Comm. of Utah,* 69 Utah 83, 252 P. 292, and cases there referred to.

It follows that the order of the Industrial Commission denying compensation is annulled. The case is remanded.

STRAUP, C. J., and ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

FOLLAND, Justice (dissenting).

Stripped to the naked question upon which a decision rests, this case resolves itself to this: Was Spencer's condition of which he complains caused by accident, as asserted by him, which occurred either on the 5th or 8th of April, or was it merely the result of an old injury aggravated by the cumulative effect of exertions while doing heavy work prior to April 9th, as found by the Industrial Commission? It is only accidental injuries that are compensable. To be compensable on this application, the finding must be that the accident referred to caused the injury or condition of which the applicant complains or aggravated a pre-existing condition. If the applicant's present condition was caused by a previous accident, the injury being aggravated by the cumulative effect of exertion while doing heavy work, it cannot be held to have been caused by an accident arising out of or in the course of employment with the state road commission. If there is substantial competent evidence to support the finding of the commission, we may not disturb it. If undisputed competent evidence leads to but one conclusion, that of an accidental injury while applicant was in the employ of the state road commission, then we may set aside the negative award of the commission. I am unable to concur in the result reached in the opinion of Mr. Justice MOFFAT on this question. The commission made findings which are fully set out in the prevailing opinion. It was found that the incident with respect to dumping the

scraper and claimed as the accident causing the injury did occur on April 5th. The date is of no importance on the question of fixing liability if in fact the injury was caused by such an occurrence in the course of employment. It was necessary, however, for the commission to find further that the condition of which applicant complains was caused by such accident, or that it was the result of something else. The commission made a definite finding that the injury was caused in some other manner and at some other time than by the occurrence of April 5th. The date is significant for other reasons. Testimony with respect thereto bears on the credibility of the applicant and is important in determining whether or not an injury resulted from the claimed accident. In his application for compensation, filed April 18, 1932, and in his testimony at the first hearing, held May 16, 1932, the applicant definitely fixed the 5th day of April, 1932, as the day of the happening of the accident. At the last hearing, and after the decision of this court in 81 Utah 511, 20 P. (2d) 618, an amended application was filed where the date was said to be the 8th of April, and the testimony elicited from and on behalf of applicant at the last hearing attempted to fix that date as the correct one. There is ample evidence in the record to support the finding of the commission that the occurrence referred to happened on the 5th rather than on the 8th of April. The commission found that applicant's condition consisting of an injury to the sacroiliac joint was not caused by any "accident or single occurrence," but that it was the result of an old injury of January, 1930, and "the accumulated effect of labor performed by applicant since the month of May 1931." Evidence of Spencer's previous injury while employed by Davis Howe & Co. in January, 1930, the treatment and care given him because of such injury, and a settlement with him by the state fund on account of such injury, was before the commission on this hearing. The evidence respecting date of injury had a more subtle influence on the decision than that indicated in the prevailing

opinion. If the accident happened on the 5th, then Spencer continued to work dumping the scraper for two or three days thereafter, notwithstanding his own physician testified that such could not be done, while, if he was not injured until the 8th, it must be he suffered pain from some other cause, since the evidence shows he suffered pain in his back for two or three days before such date. Dr. Kahn, in answer to the question, "What effect would that have on his ability to perform manual labor or bodily exertion of any kind?" said, "He could not do it." When attention was called to the testimony of Mr. Spencer to the effect that he had been injured on the 5th and continued working until the 9th, and the testimony of Dr. Kesler that Spencer had visited him on the evening of the 8th and had told him he was injured on the 5th, Dr. Kahn said, "I can't understand it, that is all." The credibility of Spencer had a large influence on the decision because of this further fact that the symptoms of a sacroiliac sprain are almost wholly subjective. Except in unusual cases, the X-ray will not reveal the truth or falsity of the claim of such an injury. There were no external evidences of an injury. The physician must depend on statements of the patient as to whether or not he suffers pain. Dr. Baldwin testified:

"Q. Was there in this any definite objective symptoms? A. None that I could find.

"Q. And by subjective symptoms that means the symptoms that you get from the patient's statements? A. That is all."

The members of the commission had to decide what evidence they would believe. They were in a much better position to judge the credibility of witnesses than we are. They had known Spencer for more than ten years, during which time they had dealt with him personally with respect to eight or nine different injuries. In view of all the facts and circumstances, particularly the medical evidence and the previous experience which the commission had had with the applicant, they decided they could not put full credence

in Spencer's testimony respecting the cause of his present condition. I think the state of the record is not such as to require a finding that Spencer's condition was caused by accident while employed by the state road commission. The Industrial Commission did not act arbitrarily or capriciously nor ignore reasonable and undisputed evidence which required an affirmative finding. There was substantial credible evidence before the commission which supports the finding made that the applicant's present condition resulted from a previous accident and injury to the sacroiliac joint plus accmulated effect of exertion while working. To hold otherwise, it would be necessary to disregard certain of the testimony of the medical witnesses and the reasonable inferences deducible therefrom. When the evidentiary facts are such that reasonable men might draw either one of two conclusions as to the ultimate facts, the findings of the Industrial Commission are conclusive on the court. The order of the Industrial Commission denying compensation should be affirmed.