380 P.2d 927

Oscar HACKFORD, Plaintiff,

v.

The INDUSTRIAL COMMISSION of Utah,
Defendant.

No. 9749.

Supreme Court of Utah.

April 30, 1963.

D. H. Oliver, Salt Lake City, for plaintiff.

A. Pratt Kesler, Atty. Gen., Gordon A. Madsen, Asst. Atty. Gen., Salt Lake City, for defendant.

WADE, Justice.

The plaintiff, applicant Oscar Hackford, seeks a review of the Industrial Commission's findings that he suffered only partial permanent disability from accidental injuries on December 31, 1957, in the course of his employment by the Deseret Livestock Company. Hackford was working as a sheepherder and camp mover when the team of horses, hitched to the wagon loaded with hay which he was unloading, became frightened and ran away. He was thrown over the front end of the load of hay and was dragged and run over by both the front and back wheels of the wagon. His pelvis bone was fractured, his spine injured and his body scratched and bruised.

Hackford was confined in the hospital for two months and 17 days. X-rays were taken when he entered and when he was released. He claims that his back did not bother him before the accident; that he felt a crack in his back while in the hospital but was not bothered much until after he was released and got out of bed and started walking around; that since then he has suffered constant pains in his back, particularly the lower parts; that he is unable to do any manual labor either in the house or out doors. He claims he is completely unable to endure the severe pains which come in his back when he stands up or walks around for more than a few minutes at a time, and that his pains have continuously been getting worse since he left the hospital.

The Commission sent Hackford to Dr. Okelberry for treatment after he left the hospital who first recommended physiotherapy treatments of heat, massage and special exercises. Later Dr. Okelberry recommended operative diagnostic surgery for a disk lesion or rupture. This Hackford refused, claiming that he acted on the advice of his foreman at the Deseret Livestock Company, who suggested that a long hospital operative treatment with no guarantee that he would be cured would not be advisable. Hackford also stated that he had lost confidence in Dr. Okelberry and asked the Commission to appoint another doctor, which was refused, and he later consulted other doctors and a chiropractor on his own. However, he claims that his back pains have constantly gotten worse. The Deseret Livestock Company at one time offered him a job as a watchman not involving heavy manual labor, which he refused, claiming that his back pains were so severe that he could not stand even that kind of work.

We have considered this case twice before. In neither instance did we consider the merits of the case, but we remanded it to the Commission for further proceedings on account of procedural deficiency.[1]

The Commission appointed a panel of three expert doctors to examine Hackford, the X-rays and Dr. Okelberry's report. At the last hearing Dr. Holbrook, the panel chairman, testified on behalf of the panel in the presence of the other two members and with their acquiescence. Dr. Okelberry's previous reports to the committee were discussed not only by the panel but by the doctors called by Hackford. After the matter was submitted, the Commission adopted the findings of the referee that Hackford "did sustain an injury arising out of his employment by defendant which resulted in a permanent partial disability of 15% loss of bodily function" and awarded him $1,050 in a lump sum for 30 weeks' compensation at $35.00 per week.

■ We reverse the Commission's findings of fact only if we find no substantial evidence furnishing a reasonable basis for such findings.[2]

Although Hackford produced strong evidence that he suffered total disability for future employment, there is still substantial evidence in the record which furnishes a reasonable basis for a finding that he is capable of limited future employment. The doctors' evidence, about which there is no serious dispute, that he suffered only 15% loss of bodily function suggests that his ability for future employment is not totally destroyed. The small loss of only 15% of bodily function suggests only a small loss of future earning capacity, and that in the doctors' opinions his pains were not so severe or persistent as he claimed they were.

■ Dr. Okelberry and the panel, while recognizing that Hackford had a pre-existing severe degenerative arthritis condition, indicated also that he was malingering. Dr. Holbrook expressed the opinion that Hackford is capable of riding horses, pitching hay and doing other similar work with limitations. Such being the condition of the evidence, even in the face of strong evidence to the contrary, there is a reasonable basis for the finding that the accident did not completely destroy his capacity for future employment. The percentage of loss of capacity for employment must be largely determined by the Commission. An employee's earning capacity depends on training, education, skill and bodily

1. See 11 Utah 2d 312, 358 P.2d 899; 12 Utah 2d 250, 364 P.2d 1091.

2. See Spencer v. Ind. Comm., 87 Utah 336, 40 P.2d 188; Crow v. Ind. Comm., 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316.

·function.[3] Hackford claimed to have such ·severe and persistent pains that he is completely incapacitated for future employment. We have expressly recognized that pains might be so severe and persistent as to have that effect.[4] Just how severe or persistent his pains are, he alone knows. But since he is an interested witness, the Commission could reasonably find contrary to his testimony on that subject.[5]

The Commission found that Hackford suffered only partial permanent disability, indicating that he still retains some earning capacity in future employment. Section 35–1–66, U.C.A.1953 [6] provides that where "the injury causes partial disability for work, the employee shall receive, during such disability and for a period of not to exceed six years from the date of the injury, a weekly compensation equal to 60 per cent of the difference between his average weekly wages before the accident and the weekly wages he is able to earn thereafter * * *."

Although there was evidence of an offer of employment after the accident, we find no evidence or finding of the Commission on the difference in his earning capacity before and after the accident. Nor do the findings of the Commission disclose any connection between the amount of the award and the difference between his earning capacity before and after the injury. So it is clear that the award is not based on this provision of the statute.

Section 35–1–66, above cited, also provides compensation of 60% of the average weekly wages with some limitations and additions for a specified number of weeks for each of 35 specified losses of bodily parts and functions. The statute further provides that in such cases the permanent loss of use of a part shall be equivalent to the loss of the bodily part. In this schedule there is specified the number of weeks of compensation for the loss of each bodily part listed. The number of weeks of compensation specified ranges from 200 weeks to as low as three weeks. For these scheduled bodily losses the number of weeks of compensation specified are provided for regardless of whether the person suffering

3. See Tintic Milling Co. v. Ind. Comm., 60 Utah 14, 206 P. 278, 23 A.L.R. 325; Spencer v. Ind. Comm., 87 Utah 336, 40 P.2d 188; Crow v. Ind. Comm., 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316; Purity Biscuit Co. v. Ind. Comm., 115 Utah 1, 201 P.2d 961.

4. See Crow v. Ind. Comm., 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316.

5. See Tintic Milling Co. v. Ind. Comm., 60 Utah 14, 206 P. 278; Standard Coal Co. v. Ind. Comm., 69 Utah 83, 252 P. 292; Spencer v. Ind. Comm., 87 Utah 336, 40 P.2d 188; Crow v. Ind. Comm., 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316.

6. See Sec. 35–1–66, U.C.A.1953; also same section in Vol. 4, 1961 Pocket Supp.

**188**

the injury also suffers loss of earning capacity.

 Following the provisions dealing with this schedule of losses of bodily parts and functions the statute provides that for "any other disfigurement or loss of bodily function not otherwise provided for herein, such period of compensation as the Commission shall deem equitable and in proportion as near as may be to compensation for specific loss as set forth in the schedule in this section. * * *" No doubt the Commission intended its award to be under this provision for a period of compensation which it deemed equitable and as near as may be in proportion to the compensation specified for specific losses in the schedule. Under the circumstances of this case, with no showing of a specific partial loss of earning capacity from the accident, but merely a claim of total permanent disability, which the Commission reasonably refused to find, the Commission could make its award under this provision. The amount of such award is for the Commission to determine within the bounds of reason under the evidence.

The decision of the Commission is affirmed.

HENRIOD, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.