## SAKAMOTO v. KEMMERER COAL CO.*
### (No. 1408; April 22, 1927; 255 P. 356.)

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—PERMAN-
ENT TOTAL DISABILITY — EXPERT TESTIMONY — COMPUTATION OF
AWARD FOR PERMANENT TOTAL DISABILITY.

1. In proceeding under Workmen's Compensation Act (Comp.
St. 1920, §§ 4315–4348, as amended), evidence that em-
ployee had lost the fingers from both hands *held* to
justify an award for permanent total disability as de-
fined by Laws 1923, c. 60, § 10, amending Comp. St.
1920, § 4334 (b), as amended by Laws 1921, c. 138, § 5.

2. In proceeding under the Workmen's Compensation Act (Comp. St. 1920, §§ 4315–4348), as amended by Laws 1921, c. 138, and Laws 1923, c. 60, court *held* within its rights in seeking expert testimony relative to effect of injury, even though it bore on an ultimate fact to be determined by the court, in view of Comp. St. 1920, § 4327, providing that taking of evidence shall be summary.

3. Under Comp. St. 1920, § 4334 (c), requiring that payment of temporary total disability shall not operate to increase award of total payments, payment to employee of sum on award for temporary total disability should be deducted from award for total permanent disability on appeal.

*See Headnotes: (1) Workmen's Compensation Acts—CJ p. 94 n. 96. (2) Workmen's Compensation Acts—CJ p. 127 n. 94 New. (3) Workmen's Compensation Acts—CJ p. 103 n. 14 New.

ERROR to District Court, Lincoln County; JOHN R. ARNOLD, Judge.

Proceeding under the Workmen's Compensation Act by K. Sakamoto, claimant, against the Kemmerer Coal Company, employer. To review an award for permanent partial disability, claimant brings error.

*D. A. Preston* and *Ray E. Lee,* for plaintiff in error.

The court erred in making an award for permanent partial disability; the evidence, which was not disputed by defendant company, showed permanent total disability; a case directly in point, except that claimant saved one finger on each hand, is In re Septimo, (Mass.) 107 N. E. 63; 254 S. W. 441; 309 Ill. 215; Bruce v. Taylor, (Mich.) 158 N. W. 153. Permanent total disability is defined by statute; Chaper 60, Sec. 10, Laws 1923. The definition is sufficiently flexible to include any condition permanently incapacitating the workman from doing work at any gainful occupation; claimant should have been awarded $4,000.00.

The following authorities apply: Carter Oil Co. v. Gibson, (Wyo.) 241 P. 219; Rockwell v. Lewis, 154 N. Y. S. 893; Ray v. Packing Co., 122 Me. 108; Coal Co. v. Industrial Commission, (Ill.) 140 N. E. 858; Mining Co. v. Industrial Commission, (Ill.) 140 N. E. 29; Bishop v. Underwriters, (Tex.) 254 S. W. 411; In re Buckley, (Mass.) 105 N. E. 979; Feinman v. Mfg. Co., 155 N. Y. S. 909; Vishney v. Iron Co., (N. J.) 95 A. 143.

*T. S. Taliaferro, Jr.,* and *Arthur-Lee Taliaferro,* for defendant in error.

The thumbs on each hand were uninjured; the use of the fingers was not wholly destroyed; Sec. 4334 C. S., as amended by Chapter 60, Laws 1923, contains a schedule that applies; the evidence showed that the disability was of a permanent partial character; Skyes Co. v. Industrial Commission, 145 N. E. 401; Keyworth v. Atlantic Mills, 108 A. 81; Chebot v. State Commission, 212 P. 792; Ballou v. Commision, 129 N. E. 755. Awards cannot be based upon expert opinion, but must be predicated on the facts; Gillette, Indirect and Collateral Evidence, Section 208; Hamrick v. State, 34 N. E. 3; Brown v. Mitchell, 36 L. R. A. 74; Flannagan v. State, 32 S. E. 81; Motey v. Pickle Marble, etc., 74 Fed. 159; 5 Enc. of Evidence p. 529. The Septimo case is not in point, as we read it, as it involved temporary total disability; the facts are not reviewable without the evidence; State ex rel District Court, 158 N. W. 700. Other cases cited are likewise inapplicable in the facts; defendant relies upon the rule in Carter Oil Co. v. Gibson, (Wyo.) 241 P. 219; a discussion of autoptic evidence will be found in Wigmore on Evidence, Vol. 2., Ch. 37, Secs. 1150-1168 and Rockwell v. Lewis, 154 N. Y. S. 893, which latter case, however, is not in point for the reason that the New York law makes the loss of use of a member, equivalent to the loss of a member; we find nothing in the list of authorities, cited by plaintiff in error, applicable to the case at bar.

RINER, District Judge.

This is a proceeding in error to review an award made by the District Court under the Workmens' Compensation Act, (Comp. Stat. 1920, Sec. 4315-4348, Chap. 138 Laws 1921, Chap. 60, Laws 1923), for permanent partial disability in favor of one K. Sakamoto hereinafter designated as the "claimant," a miner in the employ of the Kemmerer Coal Company hereinafter called the "company." It is urged by the claimant against the award, substantially, that the record evidence does not sustain it but, on the contrary, establishes claimant's permanent total disability. Whether or not this is so is the main question to be disposed of here.

The bill of exceptions recites that the parties conceded the following facts were undisputed: That since March, 1924, to and including December 6, 1924, claimant had been employed by the Coal Company as a miner; that on the date last mentioned he was injured as a result of an accident which occurred while claimant was engaged in the duties of his employment; that the accident was not due solely to the culpable negligence on the part of claimant; and that disability had lasted from the date of the accident to the date of trial, November 17, 1925.

The serious character of the injury is thus detailed in the award of the trial court:

"The injured workman's fingers on both of his hands were caught in the wheel of the McGinty prop while he was in the act of starting a car, which resulted in the loss of all his eight fingers."

The claimant offered the testimony of four witnesses, himself and three physicians. The company offered no evidence and contented itself with cross-examination of claimant's witnesses. After explaining the nature of his injury, it appearing that his fingers with some of the attached tendons were pulled off, rather than cut off, by the

accident, the claimant testified that as regards feeding himself he could just about hold a small spoon; that is, he could do that and nothing else and he is pretty "weak on the thumb and can't hold anything heavy if on the spoon;" that he could not hold a knife or fork or a big spoon; that some one else has to cut his meat and food; that his friends and neighbors had to help him dress and undress; that his hands ache every hour or so at night. On Cross-examination he testified that he could move his thumb but the effort produced a feeling of sickness; that he cannot move the middle finger of his left hand; that he cannot make the thumb of the left hand touch the little finger thereof; that he could with effort stretch out the thumb of both hands and close them.   This testimony stands in the record undisputed.

Dr. Stafford of the hospital staff, to which claimant was taken, immediately following the accident, testified that all of stumps of the fingers were amputated after the acci-- dent; that on the right hand there were no fingers, no flexor muscles or tendons left, and on the left hand there were flexors of only two fingers left, two of them being pulled out.   On cross-examination this witness said that the thumbs on the hands were "the same as they always were;" that half of the first joint of the little finger was amputated on the left hand; that the ring finger of the hand last mentioned was amputated at the second joint; that the third or large finger of the left hand was entirely removed, and the index finger thereof amputated at the second joint.   Further testimony of this witness was to the effect that claimant has nothing to grip to but the thumbs will become stronger; that on the left hand practically the entire function of the index finger is lost with the exception that he has something to grip to, but not being left-handed it would take him quite a while to develop it; that the ring finger of the left hand might develop so that claimant would be able to feed himself.

Dr. Marquis, who examined claimant's hand shortly after the latter was dismissed from the hospital in July following the accident, testified that the circulation of the blood in the hands was impeded by the injury; that in his opinion claimant even in the course of time can make no use of the fingers that are left protruding from the left hand; that part of the palm of the right hand is destroyed and as far as the thumb touching it, it would be of very little use; that a certain part of the aching feeling in the hand will last indefinitely; that injuries had caused the right hand to shrink considerably and decrease in point of usefulness; that while claimant has the palms on his hands and the stub of fingers left on one hand, there is not much usefulness there and that claimant has lost three-fourths of the usefulness of the palm.

The trial court, after referring to the fact that the statute of the State of Wyoming provides that permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis or other condition permanently incapacitating the workman from performing any work at any gainful occupation, interrogated this witness as follows:

"Now, excluding the loss of both legs, and both arms, and total loss of eyesight, paralysis, the disabilities mentioned, is there any other condition that is known to surgery that in your opinion would incapacitate this workman from performing any work at any gainful occupation?"

To which the witness responded: "The injury that he has here, with both hands injured. The palms of both hands are injured so that they are of very little use to him so far as work would be concerned, and him earning anything." Thereafter counsel for the company asked and was allowed an objection and exception to the question asked by the court.

On cross-examination this witness testified that the claimant can use the thumbs on his palms a little; they are not up to normal; the thumbs will get a little stronger but not much; his grip and holding power will slightly increase; he has very little more use with his palms than if he had lost both; the claimant's case is comparable to that of a workman who had lost both his palms because the palms here are injured so they will not at any time ever be up to what they would have been had he not had the injury.

Dr. E. S. Lauzer, a physician who had examined claimant and taken some X-rays of his hands, testified "we could tell only what bony structure he has in the hands. We found on the right hand a total loss of all fingers except the thumb; and on the left hand there are two or three stubs of fingers left besides the thumb. The palms of both hands are as they always have been as far as the bony structure is concerned; that the claimant has lost about nine-tenths of the use of his right hand, and about the same as to the left hand." In response to a question by the trial court similar to that propounded to the preceding witness this witness answered that it would be very little claimant could do at a gainful occupation. "If it is a question of what he could do, if he could do anything, why I doubt whether he can ever do any work at all." Exception and objection was taken and allowed to this question, and answer, by the company.

It is insisted by the company that the questions above mentioned, as propounded by the court to the expert witnesses of the claimant were improper as invading the court's province in the determination of an ultimate fact in the case. With this contention we do not agree, being of the opinion that the court was within its rights in seeking expert testimony even though it bore upon ultimate fact to be determined by the court. It will be remembered that the Workmens' Compensation Act, (Wyo.) Comp. Stat. 1920, Sec. 4327), provides "the taking of

evidence shall be summary, giving a full opportunity to all parties to develop the facts fully.''

It is significant also, that testimony of similar character with that here undertaken to be criticized was elicited apparently without objection and definitely referred to in the opinion of this court in Carter Oil Company v. Gibson, 241 Pac. (Wyo.) 219. Again, in the personal injury case of McDonald v. City, etc. Co., 144 Mich. 379, 108 N. W. 85, the following language was used:

''A physician who was familiar with the injury was asked, 'How much, in your opinion, have those two injuries—that is, the injuries to each foot—reduced this man's physical ability to perform manual labor?' to which he answered, 'I think it has been reduced fully three-quarters.' This was objected to upon the ground that it was pure 'speculation.' It is now argued that it was for the jury to determine that, and that it was incompetent for an expert to give an opinion. It would be competent to prove by an expert surgeon that a physical injury would make the use of an injured member an impossibility, and he should be able to tell in cases where an upprofessional man could not determine whether such an injury would impair a man's ability to do physical or mental labor, and in such a case no reason is suggested for not taking his opinion as to the degree of impairment. The case of Muldraugh's Hill, etc. Turnpike Co. v. Maupin, 79 Ky. 101, is in point. The court said:

'Dr. Bass' statement that, if he were examining the appellee for a pension, he would allow him one-fourth, we understand to be his professional opinion that his capacity for labor is reduced one-fourth by the rupture. This, we think, was competent. The jury cannot be supposed to be familiar with the character of that injury, or to be able, unaided, to properly estimate its effect in impairing the appellee's capacity to earn money, and, hence, it was proper to allow them to be enlightened by expert testimony.' ''

In Eastern etc. Line v. Hope, 95 U. S. 297, 24 L. Ed. 477, it is said concerning this kind of testimony:

"The witness was an expert, and was called and testified as such. His knowledge and experience fairly entitled him to that position. It is permitted to ask questions of a witness of this class, which cannot be put to ordinary witnesses. It is not an objection, as is assumed, that he was asked a question involving the point to be decided by the jury. As an expert, he could properly aid the jury by such evidence, although it would not be competent to be given by an ordinary witness. It is upon subjects on which the jury are not as well able to judge for themselves as is the witness that an expert as such is expected to testify. Evidence of this character is often given upon subjects requiring medical knowledge and science, but it is by no means limited to that class of cases."

See also Kelly v. John R. Dailey Co., 56 Mont. 63, 181 Pac. 326, at 331; Lemley v. Doak etc. Co., 40 Cal. App. 146, 180 Pac. 671, at 674.

The Statute, (Section 10, Chap. 60, Laws 1923) defines "permanent total disability" as "the loss of both legs or both arms, total loss of eyesight, paralysis or other condition permanently incapacitating the workman from performing any work at any gainful occupation."

It is urged by the company that the clause in the statute reading "or other condition permanently incapacitating the workman from performing any work at any gainful occupation" is not applicable to this case and is only pertinent to an infirmity which renders the sufferer "physically broken and wrecked for all purposes except merely to live." The schedule of compensation for permanent partial disability (Comp. Stat. Wyo. 1920, Sec. 4334 A) is taken by the company, and from the simple addition of the several amounts in said schedule allowed for the loss of separate specified fingers or parts thereof, a total is arrived at which is $216.56 less than the amount awarded by the trial court, that amount being $1300.00.

While it is claimed the lower figure is all that is fixed by statute for the injury involved in this case, the com-

pany raises no objection to the award as made, and seeks its affirmance.

Leading courts of the country have said, concerning statutes of the class here involved:

"The act is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design." Young v. Duncan, 218 Mass. 346, 348; 106 N. E. 1, 3.

"The statute was the expression of what was regarded by the legislature as a wise public policy concerning injured employes. Under such circumstances we think that it is to be interpreted with fair liberality to the end of securing the benefits which it was intended to accomplish." In re Petrie, 215 N. Y. 335, 338, 109 N. E. 549, 550.

An examination of the schedule of compensation for permanent partial disability, in conjunction with the definition of permanent total disability, both statutory provisions being already referred to hereinabove, will make it clear that while the legislature has fixed specific awards for the loss of single members of the body, the cumulative effect of injuries has not been overlooked. To illustrate: For the loss of an arm above the elbow, according to the schedule, $1500.00 is fixed, yet the loss of both arms is expressly designated as permanent total disability, and not $3000.00 but the total award of $4000.00 is given. The same principle is applied by the statute to the loss of eyes and legs. It is obvious that such a result is proper and just.

Now, the schedule in the statute relative to permanent partial disability, while fixing a definite award for the loss of one hand is silent as to the award to be made for the loss of both, unless (1) the principle of merely doubling the award is adopted, thus disregarding the cumulative effect of the injury, if any, as shown by evidence, or (2) the case be considered to come under the clause "or other condition permanently incapacitating

the workman from performing any work at any gainful occupation," as the evidence may require. It is plain that the first alternative is neither just nor does it conform to the policy of our statute. The second alternative seems to us to include the case if the evidence justifies such conclusion. We cannot accede to the view that the clause of the statute last above quoted refers to cases where the injury has left an injured man merely the spark of life. If that view be regarded as sound then the case of Carter Oil Company v. Gibson, supra, was wrongly decided, and we do not think it was. In that case the injured workman testified in open court and obviously could do much more than "merely to live." But the evidence in that case showed the workman would not recover and would never be able to work at a gainful occupation. There the injury was to a finger and a foot resulting in neurosis. An award was allowed for permanent total disability, though the injury in that case is not one of those specifically described in the statute defining that condition.

As was well said by the Supreme Court of Minnesota, in discussing a somewhat similar statute, the law

"provides that certain injuries shall constitute permanent total disability. There are, however, many other injuries which may result in permanently and totally disabling a man. Those set forth in the statute are not intended to be exclusive. Cases must be passed upon as they arise and no hard and fast rule can be formulated so as to include them all." State ex rel Casualty Co. of America v. District Court, 133 Minn, 439, 158 N. W. 700.

The workmens' compensation act of the State of Oklahoma provides "loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability." And in the case of Superior etc. Co. v. Bishop, 85 Okla. 204, 205 Pac. 497, it was held that when

it appeared that an injured workman had suffered the loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, or the permanent loss of the use of such members, he could not be denied the compensation provided in the Act because he obtained employment even at better wages at a task which he is physically able to perform. The law in the State last mentioned also provided "permanent loss of the use of a hand, arm, foot, leg or eye shall be considered as the equivalent of the loss of such hand, arm, foot, leg or eye." In view of the testimony of the physicians in the case at bar already recited, it is interesting to note this legislative declaration that total permanent disability means also the loss of or loss of use of both hands by an injured workman.

In the case of State ex rel Casualty Co. of America vs. District Court, supra, it appeared that the injuries of the workman resulted in the total destruction of sight in the right eye and impairment of vision to the extent of 95 per cent of the left eye, which, by the aid of glasses, could be increased to about one-third normal. It also appeared that the workman sustained other injuries which affected his head so that he could not stoop or bend over without pain. There was also evidence tending to show that he would not be able to do any work or engage in any occupation to earn a livelihood. Under this set of facts the Supreme Court of Minnesota held that a finding that claimant was permanently totally disabled was quite proper.

In Employers' etc. Co. v. Industrial Commission, 70 Colo. 228, 199 Pac. 482, it appeared that the Industrial Commission had awarded the defendant in error full compensation under the Workmens' Compensation Act of the State of Colorado for total blindness of the right eye. In affirming the award made, and which had already been affirmed by the District Court, the Supreme Court of Colorado used the following language:

"It is agreed that he lost but 90 per cent of the eye's sight, and retained 10 per cent. The Commission made a finding of 'almost complete loss of vision' in the injured eye, and 'that the amount of vision now remaining is of no value from a working standpoint.' Under such finding the award was right."

In Stammers v. Banner Coal Co., 214 Mich. 215, 183 N. W. 21, it appeared that a workman, a miner, had met with an accident to his left eye, which reduced the vision in such eye to 5 per cent. The Industrial Accident Board, under the Workmens' Compensation Act, held that the miner had lost his eye within the meaning of the Act. The appellate court said:

"Has plaintiff lost his eye? The usefulness of the eye for all practical purposes has been lost. A percentage of vision so slight as to be cognizant of strong light only and to merely give impressions of large objects and a door and window opening can be of no use in industrial pursuits or any other vocation. Without the help of his other eye it would be impossible for him to work at all or to even go about the streets. The injured eye has lent no aid to plaintiff in his work since the accident."

The ruling of the Industrial Accident Board was upheld.

We have already given a substantial abstract of the testimony in the record bearing upon the ability of the claimant in this case to perform any work at any gainful occupation. At the date of trial nearly a year had elapsed since the accident occurred, yet the claimant was shown to be practically helpless in some of the most elemenary tasks of life. It appeared that he was a common laborer and relied solely upon the use of his hands to gain a livelihood. The physicians testifying, and who were asked concerning the matter, agreed that there was no work he could perform in a gainful occupation in consequence of the injuries suffered. The company did not establish any-

thing to the contrary. It is true that the claimant has some stubs of fingers left on his left hand and the bony structure of both palms intact, but from the record it is apparent they are of no substantial use to him in performing work in a gainful occupation. In line with the Colorado, Wisconsin and Michigan cases these members can fairly be regarded as lost so far as performing work in any gainful occupation is concerned.

While it is true, as said by this court in Standard Oil Company of Indiana v. Sullivan, 33 Wyo. 223, 237 Pac. 253, that:

"Except in cases of permanent total disability that are specifically described in the statute, we believe a total disability should not be declared to be permanent unless it appears pretty clearly that the affliction will not yield to treatment, and that the workman will never be able to work at 'any gainful occupation,' "

in our opinion the record evidence in this case does very clearly bring the claimant within the terms of the rule just referred to, and an award for permanent total disability should be made him.

As the statute provides in case of temporary total disability, (Sec. 4334 C, Comp. Stat. Wyo. 1920), in no case shall the award of total payments made exceed in the aggregate the "lump sum amount herein specified to be paid an injured workman for injuries causing permanent total disability," and as in the instant case the claimant has received the sum of $365.00 awarded him for temporary total disability, this amount should be deducted from the award for total permanent disability which, as already indicated, should be made.

It results from what has been said above that the award of the District Court brought up for review herein should be set aside and the case remanded to that court with directions to enter an award for full permanent total dis-

ability, deducting therefrom the amount already received by the claimant for temporary total disability.

*Reversed and Remanded with Directions.*

BLUME, Ch. J., and BROWN, District Judge, concur.