## CAILLET v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5712.   Decided June 16, 1936.   (58 P. [2d] 760.)

*Edgar C. Jensen* and *Shirley P. Jones,* both of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

ELIAS HANSEN, Chief Justice.

Plaintiff filed an application with the Industrial Commission of Utah whereby he sought an award of compensation as and for permanent total disability, and in the event such compensation should be denied he asked that he be awarded compensation as and for permanent injuries. A hearing was had on his application and further compensation was denied. Plaintiff brings his cause to this court for review. He contends that the evidence offered and received before the commission is such as to require as a matter of law a finding that he sustained permanent total disability in the course of his employment by the Liberty Fuel Company and that he should be awarded compensation accordingly. There is no substantial conflict in the evidence. On January 10, 1929, the applicant was injured in the course of his employment in the state of Utah. His employer, the Liberty Fuel Company, was, at the time plaintiff received the injury complained of, subject to the Industrial or Work-

men's Compensation Act of this state (Rev. St. 1933, 42-1-1 et seq.). The employer carried insurance with the State Insurance Fund. At the time plaintiff sustained his injury he was riding a rope in the mine of his employer. His glove caught in a cable and he was dragged under a car. As a result of the accident it became necessary to amputate plaintiff's right hand and arm approximately three inches above the wrist and also to amputate the index and middle fingers of his left hand into the palm of the hand almost to the wrist. Plaintiff's right knee was also injured. Following the accident, plaintiff was paid compensation at $16 per week for six years in the total sum of $4,985.14. His medical and hospital treatment in the sum of $486.64 was also paid. Plaintiff was 19 years of age at the time he was injured. He, at that time, had a common school education and one year in high school. Prior to his injury he had worked on a farm and in a mine. Since his injury he has for a period of about two years studied draftsmanship. He has attempted to secure employment but has not been successful.

A number of witnesses were called who testified touching the functional loss sustained by plaintiff in his left hand and in his knee and also as to whether or not his injury precluded him from securing and retaining gainful employment. Dr. Mosiah Hall testified that he is and for twelve years has been supervisor of vocational training and rehabilitation for the state of Utah; that he is acquainted with plaintiff and the nature and extent of his injuries; that he has given plaintiff's case very careful consideration; that from his experience and in his opinion plaintiff is not able to perform manual or other remunerative labor; that he is not only physically incapacitated, but is so lacking in confidence in himself that he is unable to refit himself for any useful occupation.

Dr. L. N. Ossman testified that he is a practicing physician and surgeon; that he has specialized in surgery of the bones, joints, and muscles; that he has been the orthopedic

surgeon for the United States Veterans' Bureau since 1922; that part of his work with the Veterans' Bureau has been the rehabilitation of physically injured persons; that he has examined the plaintiff and finds him unable to do manual labor; that he is of the average intelligence of a working man; that he is modest and retiring, not graceful, and apparently self-conscious of his infirmities; that in his opinion plaintiff is not now able to earn a living by manual labor and mentally he is not qualified to be trained for any occupation that would enable him to make a living; that in the witness' opinion plaintiff is permanently and totally disabled; that plaintiff can feed and dress himself, but he is not employable; that the disability of plaintiff's left hand is about 60 per cent.; that the disability in his right knee is 15 to 20 per cent; that while plaintiff retains 40 per cent. of his left hand, he is, so far as making a living is concerned, in the same condition as though he had lost the whole hand; that there probably are men with as bad or worse physical condition as that of the plaintiff who are able to make a living, but such men must have a better mental equipment than plaintiff has.

Dr. Martin C. Lindem testified that he is a physician and surgeon and has practiced as a general surgeon; that he attended plaintiff after his injury; that in his opinion the loss of function of his left hand is 60 per cent. and of his knee 10 to 15 per cent; that the estimate of the loss of function of the left hand is based on the anatomical and physiological findings.

Dr. A. L. Hueter testified that he is an orthopedic surgeon; that he has been engaged in that profession for a period of ten years; that he recently examined plaintiff; that in his opinion plaintiff has lost about 60 per cent of his left hand and 10 per cent of the function of his knee.

Plaintiff testified that he worked on a farm and in mines before his injury, but because of his injury he is now unable to do that kind of work; that since his injury he attended school for two years where he studied mechanical drawing;

that he tried show-card writing but could not do that; that he tried radio telegraphy but was told he could not do such work; that in drafting he was very slow and required twice as much time to draw as others who had the use of their hands; that he had to hold the instruments in his mouth; that after he finished school he tried to get work and was unable to do so; that he tried to get a job as a night watchman at the mine where he was injured and was unsuccessful; that when the weather is cold he cannot use the two fingers and thumb on his left hand; that when cold it seems as though his fingers are thumbs and that at such times he cannot button his shirt; that his father is a common laborer and that he has no relatives or friends who can give him a job; that he is unable to tie his necktie; that he is able to lace his shoes with the aid of a hood on his right arm; that he can feed himself; that his knee troubles him when he walks any considerable distance; that he is somewhat sensitive about his injury; that he believed he could do the work of a watchman if he could get a job; but that if the weather is cold he cannot do anything with his hand.

George A. Schultz testified that he is the superintendent of the Liberty Fuel Company; that he had had considerable experience in employing men and in placing them in different occupations; that he is acquainted with the plaintiff and his physical condition; that he would not employ plaintiff unless it was for purely sentimental reasons; that if plaintiff were a stranger he would not employ him because of his disability; that when plaintiff applied to the witness for a job he told him that he did not have a job for a watchman; that if he had had a job he would not give it to plaintiff unless it was for sentimental reasons; that before the Workmen's Compensation Act was passed his employer took care of the men who were crippled while at work for the company; that his company could not afford to do so since the Compensation Law went into effect.

Dr. L. J. Paul testified that he is a licensed practicing physician in the state of Utah; that he had been superin-

tendent of the Cleveland City hospital, a medical officer in the army, and regional medical officer for the United States Veterans' Bureau, and since 1931 consulting surgeon at the Veterans' Administration Hospital; that as regional manager of the Veterans' Bureau he has charge of compensation rating of injured veterans, and that after a man has finished vocational training his fitness is determined before he is declared rehabilitated; that he is one of the committee to pass upon whether or not a person has been rehabilitated so that he can go to work; that he has personally handled hundreds of such cases; that he has examined plaintiff physically and mentally and is familiar with his educational attainments; that under the government rating plaintiff has suffered a 75 per cent loss of his left arm; that the grasp in the remaining fingers of the left hand is not sufficiently strong to enable him to carry on in any occupation; that in the opinion of the witness, plaintiff is totally incapacitated from earning a living.

A medical advisory committee, consisting of Drs. John Z. Brown, Jr., James P. Kerby, and D. E. Smith, examined plaintiff and after such examination placed the disability of his left hand at 60 per cent and of his knee at about 20 per cent.

The foregoing is a summary of all the evidence offered and received at the hearing before the commission. It will be observed that there is no substantial conflict in the evidence, which was all to the effect that plaintiff is totally and permanently disabled; that is to say, because of his injuries he is unable to either secure or perform any work as an employee. That the evidence is sufficient to sustain an award as and for permanent disability had the commission so ordered is clear. *Rockwell* v. *Lewis*, 168 App. Div. 674, 154 N. Y. S. 893; *Congoleum Nairn, Inc.*, v. *Brown*, 158 Md. 285, 148 A. 220; Floccher's Case, 221 Mass. 54, 108 N. E. 1032; *Joliet & E. Traction Co.* v. *Industrial Comm.*, 299 Ill. 517, 132 N. E. 794; Thomas H. Meley's Case, 219 Mass. 136, 106 N. E. 559; *Moore* v. *Peet Bros. Mfg. Co.*, 99 Kan. 443,

162 P. 295; *Superior Smokeless Coal & Min. Co.* v. *Bishop*, 85 Okl. 204, 205 P. 497; *New York Indemnity Co.* v. *Industrial Comm.*, 86 Colo. 364, 281 P. 740; *Ball* v. *William Hunt & Sons*, 4 Butterworth's Workmen's Comp. Cases, 225; *Wassick* v. *McKeesport Tin Plate Co.*, 27 Pa. Dist. R. 13; *Spring Canyon Coal Co.* v. *Industrial Comm.*, 74 Utah 103, 277 P. 206; *Utah Fuel Co.* v. *Industrial Comm.*, 76 Utah 141, 287 P. 931; 2 Schneider on Workmen's Comp. Law, 1428.

The serious question presented by this record is whether or not the evidence is such as to demand as a matter of law that plaintiff be awarded compensation as and for permanent total disability. In the case of *Sakamoto* v. *Kemmerer Coal Co.*, 36 Wyo. 325, 255 P. 356, under ▪ facts comparable to those of the case in hand, it was held that the injured workman was as a matter of law entitled to such compensation. That the nature of the injury sustained by plaintiff is such as to make him permanently and totally disabled from doing any manual work requiring the use of his hands cannot reasonably be doubted. Not only does his physical condition demand such a finding, but the expert testimony is all to that effect. In this connection it is urged by the defendants that the expert evidence touching the inability of the plaintiff to secure and perform labor is the ultimate fact to be determined by the commission and, therefore, that the evidence touching that phase of the case was improperly received and should not be considered. We are unable to agree with that contention. There are authorities to the contrary. *Sakamoto* v. *Kemmerer Coal Co.*, supra; Schneider on Workmen's Comp. Law (2d Ed.) 1850. "When, however, the matter is one within the knowledge of a layman, the Commission is not obligated to decide according to the testimony given by experts." Schneider on Workmen's Comp. Law (2d Ed.) 1852, and cases there cited.

The evidence in this case having conclusively shown that the plaintiff is permanently and totally disabled from either securing or performing work of the general character that

he was performing when injured, he by such evidence established a prima facie case, and in the absence of any showing that he is able to secure and perform work of a special nature not generally available, he is as a matter of law, entitled to an award as and for permanent total disability. 71 C. J. 1071; *Consona* v. *R. E. Coulborn & Co.*, 104 Pa. Super. 170, 158 A. 300; *White* v. *Tennessee Consol. Coal Co.*, 162 Tenn. 380, 36 S. W. (2d) 902; *Lunardello* v. *Republic Coal Co.* (Mont.) 53 P. (2d) 87; Schneider on Workmen's Comp. Law (2d Ed.) vol. 2, § 403, pp. 1544, 1545; Note in 33 A. L. R. 123. No evidence was offered or received before the commission which showed, or tended to show, that plaintiff is able to secure employment of a special nature not generally available or that he is able to perform the duties of such employment. The evidence is all to the contrary.

Upon this record plaintiff as a matter of law is entitled to compensation as and for permanent total disability. Having reached this conclusion, it is not necessary to discuss the other questions presented. The order of the commission denying compensation as and for permanent total disability is annulled. Plaintiff is awarded his costs.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting).

The physical condition of this boy makes me sorry I cannot concur. Even in normal economic times on the competitive labor market he could not compete and would be gradually pushed back among the indigent unemployables. But in my opinion the Legislature has failed adequately to cover such a case and we cannot do it. A brief survey of the theory of the Industrial Commission Act (Rev. St. 1933, 42-1-1 et seq.) may be helpful. Compensation is payable for disability to earn caused by accident in employment. Tem-

porary total disability is founded on actual disability. Permanent partial is founded theoretically on loss of earning ability, but is absolute in law whether loss of earning ability is actually suffered or not. The law presumes the loss of earning power. It is presumed on loss of bodily function. If an arm, or leg, or eye is lost, the employee gets compensation even though he earns ten times as much as formerly as, for instance, a radio announcer. The vocational factor is not an element in the loss of bodily function. *Broderick* v. *Industrial Commission*, 63 Utah 210, 224 P. 876; *Amalgamated Sugar Co.* v. *Industrial Commission*, 75 Utah 556, 286 P. 959. The complete loss of use vocationally was equivalent to a loss of the member because if a member left on is no more use than a member off, but rather an impediment, the law treats it as if it were off. *Broderick* v. *Industrial Commission*, supra; *Spring Canyon Coal Co.* v. *Industrial Commission*, 74 Utah 103, 277 P. 206. And any loss of bodily function not provided for in the schedule in section 42-1-62, R. S. Utah 1933, is to be based on "proportion to the compensation in other cases" provided in the schedule. That results in the necessity for evidence on the remaining function in terms of the original or full physical function of the member.

When we get to section 42-1-63 dealing with total permanent disability, we are once more back in the field of actual loss of ability without conclusive presumptions of law as in section 42-1-62, except in the case of the loss or complete loss of use of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof. In all other cases there must be a proof of permanent total disability. What is "total disability"? It does not mean total loss of bodily function. If so, a man would have to be hopelessly paralyzed. It does not mean such disability which would prevent any person from doing any work. If that were so, it would mean loss of mind, for some persons have energy and will to re-train themselves to earn so long as their minds are good. It means disablement of the particular applicant to

earn wages in the type of work (not just the particular work he did do) he was trained for or any other type of work which a person of his mentality and attainments could do. It cannot depend on whether or not the economic situation prevents him from getting a job. The test is his capacity, not whether the economic situation permits that capacity to be applied in industry.

I recognize that there might be a combination of losses of members or total loss of use of members which would spell total permanent disability rather than an addition of the compensations for such losses under section 42-1-62. Thus, if in this case the plaintiff had been injured by the loss of three fingers and part of the fourth on his left hand as in the case of *North Beck Mining Co.* v. *Industrial Commission,* 58 Utah 486, 200 P. 111 (held to be equivalent to the complete loss of use of the whole hand), and the right hand was completely off as in this case, it would be the complete loss of two hands and the conclusive presumption of law set out in section 42-1-63, R. S. Utah 1933, would apply. But since it cannot be brought under the conclusive presumption, there must be proof of actual total disability. How stands it in this regard? The evidence is the opinions of doctors and of rehabilitation men and Schultz, superintendent of the Liberty Fuel Company. I do not think the doctors are competent to give testimony on whether an applicant is economically totally disabled. Their province is to state the amount of functional disability. The commission first determines from such evidence what the functional disability of the applicant is. Then, from the knowledge of what is required by way of mental, physical, and personal capabilities in the various fields of human endeavor, the commission can determine whether this particular man has any remaining orbit of economic usefulness or opportunity. The commission may take evidence on the question of what may be required in different fields if in its general experience it is not apprised. It was competent for the commission to call on Dr. Mosiah Hall to find out what he had tried

to do with the boy in order to get some idea of his mental capacities, probabilities for training, but not for the witness' opinion as to whether the boy was totally disabled. The commission from its experience and any investigation as to what is required in various fields after ascertaining the capacities of the applicant must make that deduction. It can say whether the applicant in this case, with his disability, training and mental capacity, would be able to work as a watchman, salesman, or in some other field of human endeavor.

The statement in Schneider on Workmen's Compensation, regarding the competency of doctors testifying to the ultimate fact and mentioned in the prevailing opinion, is based, according to the footnote, on the cases of *Blythe* v. *Askew & Union Indemnity Co.*, 2 La. App. 415, and *Sakamoto* v. *Kemmerer Coal Co.*, 36 Wyo. 325, 255 P. 356. The first case appears not to support the doctrine. It is, in fact, rather to the contrary in the intimations. In the Wyoming case the court confused the doctor's competency to answer a question concerning the percentage of functional disability with the matter of vocational disability.

No one knows whether the doctors in their opinions in this case that the applicant was totally disabled for work took into consideration all the fields of endeavor in which he might operate, or whether they might not have taken in the matter of his being unable to obtain any job because there were so many men out of work. This cannot be an element because compensation might then depend on the particular time when the injury occurred. It is the amount of capacity to earn which is subtracted by the injury, and not by the economic situation, which is the basis for the determination.

In this case there was introduced testimony that the applicant was diffident and had lost confidence in himself. I do not think these are elements. His mental capacity—whether dull or bright, normal or subnormal—may be taken into account. That is part of the particular applicant the commis-

sion has under observation. *Utah Fuel Co.* v. *Industrial Commission,* 76 Utah 141, 287 P. 931. But the more intangible elements, such as lack of confidence caused by the accident, are not. It may be correct in the general appraisement of the individual to take into account personality, diffidence, aggressiveness, initiative, or the lack of it, in order to determine the possibilities of such individual to operate in certain fields of endeavor. Thus, a dull, slow, stupid person and a bright, educated, enterprising one may be in different categories in respect to self-help after the accident. But temperamental differences caused by the accident will lead to impracticability in applying any standards. If the commission in this case had come to the conclusion that the applicant was totally disabled under the evidence, the award would have had to be upheld, because the commission was the one to judge of applicant's ability to earn in any field of human activity, and if it had held that this particular man with his particular makeup and impairments was totally unable to earn substantially his living, we would have upheld it because still within the zone of reasonable conclusions. But it is equally qualified to conclude under its knowledge and experience that this particular man is not totally disabled, and, in my opinion, that decision should be upheld.