## BABICK v. INDUSTRIAL COMMISSION et al.

No. 5832.   Decided March 11, 1937.   (65 P. [2d] 1133.)

*Frederic H. Henroid,* of Midvale, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Merrill C. Faux,* of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review an order denying compensation to Babick for alleged permanent and total disability. Applicant was injured in the course of his employment on June 20, 1930, with the Park-Utah Consolidated Mines Company, an employer subject to the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.). His injury was to the spinal cord. For a time he was totally paralyzed. The spinal cord was exposed, fragments of the bone pressing on it and on the nerves leading from it, and blood clots were removed. The lamina or posterior of the back covering of the spinal cord for a distance along the lumbar region was removed. There is an ankylosis of the twelfth dorsal vertebra and the two lumbar vertebrae below.

He recovered full use of arms and shoulders and his muscles above the waist. But his legs show muscle atrophy from the hips down. Beginning at the hips, many of his muscles

are weaker than they otherwise would be. The muscles having to do with the movement of the thighs, that is, the flexors of the thighs, are essentially normal. But the muscles in the thigh that extend the leg are weak. He can without any hesitancy lie down and cross his legs, so he has ability to perform the usual function at the knee. Both extensors and flexors are, however, weaker than normal. The muscles involved in the use of controlling the foot are more seriously involved than those in the thigh. The muscles that dorsal flex the foot are almost entirely gone. Therefore he has difficulty when he walks in bringing the foot up. The plantar flexion of the foot that brings the foot down is present but approaches what is typically known as a drop foot. In his gait the toes drop down so he has to raise his feet so that they come down with a slapping motion in order to clear the surface he walks on. All these injuries are due to the injury to the lumbar spine. There is no loss of nerve mechanism. He has no loss of deep muscle sensation. He can put his toe in any position and can tell what position it is in. His bowel and bladder functions are complete. He has practically all the sensations fully established.

The above is from the testimony of Dr. L. C. Snow, who took care of Babick commencing two days from his accident and performed what the other doctors said was a very skillful operation. The doctor testified also that he is strong in the arms and shoulders and that he has splendid muscle there and is well nourished. His functional disability is permanent and fixed. These facts are not in dispute. The applicant himself testified that he suffers pain; that he cannot stay in one position for more than a half hour; Dr. Snow was of the opinion that the pains were "subjective"; that there was no reason for pain; that on July 1, 1935, he seemed devoid of pain and there was no change that would produce pain, but "hours in one position might make him uncomfortable."

Dr. Snow and all the other doctors agreed that the applicant could not carry on as a miner. In Dr. Snow's opinion he would be incapable of engaging in any of the industrial

pursuits except the "odds and ends of those jobs." There was evidence that he could carry on the work of a mine watchman; that he would be 60 to 70 per cent efficient in running a "hot dog" stand and would have about the same efficiency in pasting labels; that he could run a news stand, sell shoe laces, chop kindling wood, and do lighter jobs about the house. The doctors testified that, compared with his entire bodily function, the amount of disability ran from 50 to 75 per cent. There was a consensus of opinion that he could not do mining or engage in any occupation requiring heavy manual labor, nor any kind of industrial work of the type he had been doing, on account of the functional disability of his legs.

In the case of *Caillet* v. *Industrial Comm.*, 90 Utah 8, 58 P. (2d) 760, 762, it was held:

"The evidence in this case having conclusively shown that the plaintiff is permanently and totally disabled from either securing or performing work of the general character that he was performing when injured, he by such evidence established a prima facie case, and in the absence of any showing that he is able to secure and perform work of a special nature not generally available, he is, as a matter of law, entitled to an award as and for permanent total disability."

In the Caillet Case, the applicant had one hand off and two fingers of the other hand amputated almost to the wrist, which gave him 100 per cent loss of function of one hand and 60 per cent of the other. He had a 20 per cent loss of knee action. The evidence showed that his ability to do any work substantially remunerative was so negligible as to approach the vanishing point. Moreover, the opportunity to secure the very few types of work he could do was nil. Perhaps the language from that case above quoted is a little too inclusive. It would fit the person who had one leg or an arm off. A workman who had done manual labor who lost an arm or leg could not "perform the work of the general character that he was performing when injured," and yet under a strict following of this rule he would establish a prima facie case. In the first place, the rule was

not meant to operate in any case where specific compensation for a loss of a member or loss of function of a member was provided by statute for permanent partial disability. In the second place, even where the loss of function is such as to come between that zone limited on the one side by section 42-1-63, R. S. 1933, making certain losses, in law, total and permanent disability, and, on the other side by cases which can be said in law involve only partial permanent disabilities (to be determined by the general paragraph of section 42-1-62, where the commission must fix it in proportion to the fixed compensation named for definite losses), the old rule applies that we will not disturb the commission's judgment in such case unless it is arbitrary. The rule in the Caillet Case that there is permanent and total disability as a matter of law when it appears that the applicant cannot secure or perform work of the general character he has been doing and it further appears that there is no showing that he is able to perform and secure work of a special nature not generally available, only modifies the general rule that the commission's findings as to a case in the above mentioned zone will not be disturbed unless arbitrary when it appears that the kinds of work the injured is able to do are circumscribed to a very few indeed, and that even those are types of work which are not obtainable in the community or are obtainable to such limited extent that it would be practically impossible for the applicant with the type of injuries he has to secure such job.

This case does not fall under that category. The evidence shows that there is, while limited, still a fair field of economic activity open to the applicant of the sort which can return him a fair living. The commission did not act arbitrarily. We cannot disturb the findings.

The order of the commission denying compensation for total and permanent disability is affirmed, with costs to the commission.

FOLLAND, C. J., and HANSON, MOFFAT, and LARSON, JJ., concur.