Tommy BOOMS, Plaintiff,

v.

RAPP CONSTRUCTION COMPANY, the State Insurance Fund and Second Injury Fund, Defendants.

No. 19803.

Supreme Court of Utah.

June 6, 1986.

Robert J. DeBry, Phillip B. Shell, Salt Lake City, for plaintiff.

Gilbert Martinez, Second Injury, David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., James R. Black, State Ins. Fund, Salt Lake City, for defendants.

DURHAM, Justice:

Tommy Booms (the claimant) appeals from a decision of the Industrial Commission of Utah terminating temporary total disability benefits. The claimant contends that the Commission improperly terminated temporary disability benefits without making a finding of his ability to work. The claimant also seeks to have the case remanded on the ground that the administrative law judge abused his discretion when he failed to have the medical panel psychiatrist examine the medical report of the claimant's psychiatrist. Finally, the claimant argues that the judge improperly failed to reopen the case for testimony regarding

the injury to the claimant's left shoulder. We affirm in part, reverse in part, and remand for consideration of the left shoulder injury.

On December 3, 1979, the claimant was injured in an industrial accident while he was employed as a carpenter for Rapp Construction Company. The claimant was pulling concrete forms off a wall when one form popped off suddenly, causing him to wrench his right arm and shoulder. The claimant contends that he injured his left shoulder at the same time. The Industrial Commission denied Workers' Compensation benefits for the problems associated with the left shoulder.

On May 12, 1982, the Industrial Commission held a hearing in which the administrative law judge received testimony by the claimant and referred the case to a medical panel. Because the claimant had changed attorneys shortly before the hearing, the administrative law judge agreed to permit the claimant to supplement the file regarding evidence pertaining to the left shoulder injury. The claimant submitted letters from two co-workers and a treating chiropractor supporting his contention that he injured his left shoulder at the time of the industrial accident and moved the court to reopen the hearing to receive testimony from those witnesses. The administrative law judge never acted on that motion; however, it did submit the letters to the medical panel with a cover letter which stated that although the letters were not "formally admitted into evidence ... you may assume the contents to be true and correct for purposes of your evaluation." The medical panel examined the claimant and submitted its report to the administrative law judge. The claimant's attorney objected to the report and requested that clarifying questions be presented to the panel.

On April 20, 1983, prior to receiving answers to the claimant's clarifying questions, the administrative law judge issued its findings of fact, conclusions of law, and an order, reserving the right to modify that order pending answers from the medical panel. Based on the evidence presented by the medical panel, the administrative law judge found: that the period of total disability ended on August 24, 1981; that the claimant's medical condition had stabilized on that date; and that his total physical impairment of the whole man was fifteen percent for injury to the right shoulder and related psychiatric problems. The administrative law judge acknowledged that the claimant had received $18,900 in temporary total disability benefits and $9,464.37 for medical expenses and awarded $6,552 for permanent partial disability.

On May 17, 1983, the medical panel submitted a supplemental report to the administrative law judge answering the "clarifying questions" submitted by the claimant's counsel. In the supplemental report, the panel acknowleged that the claimant's left shoulder was injured, but it concluded that the left shoulder injury resulted from a preexisting condition and not the industrial accident of December 3, 1979. The panel based its conclusion primarily on the fact that the claimant had not mentioned the left shoulder injury to treating physicians. The claimant objected to the supplemental report, and the administrative law judge ordered a hearing on both the original and supplemental medical panel reports. At that hearing, Dr. Green, Chairman of the Medical Panel, testified that his opinion regarding the left shoulder injury would be affected if credible witnesses stated that the claimant had complained of left shoulder pain at the time of the injury. After the hearing, the claimant submitted the deposition of a vocational and rehabilitation expert with a request for a finding of the claimant's ability to work. On December 20, 1983, the administrative law judge issued its final order. That order affirmed its prior findings.

The first issue raised on appeal is whether the Industrial Commission can terminate temporary total disability benefits after a finding of medical stabilization without making a finding that the worker is able to return to work. An award of temporary total disability benefits is governed by U.C.A., 1953, § 35–1–65 (Supp.1985), which

provides: "In case of temporary disability, the employee shall receive 66 ⅔% of that employee's average weekly wages at the time of the injury *so long as the disability is total....*" (Emphasis added.) The claimant argues that the underscored language requires that the disabled employee receive weekly benefits until a specific factual finding of ability to work is made and relies on our opinions in *Entwistle Co. v. Wilkins,* 626 P.2d 495 (Utah 1981), and *United Park City Mines Co. v. Prescott,* 15 Utah 2d 410, 393 P.2d 800 (1964). In *Entwistle,* we stated that temporary total disability may be found if the employee "can no longer perform the duties of the character required in his occupation prior to his injury." 626 P.2d at 498 (footnote omitted).

Temporary total disability benefits are typically awarded after a worker suffers a job-related disability that prevents him or her from returning to work. The purpose of those benefits is to "provide income for an employee during the time of recuperation from his injury and until his condition has stabilized." *Id.* at 497 (footnote omitted). Thus, temporary total disability benefits are to continue until the Commission determines that the disability fits into another disability classification or until benefits have been paid for the statutory maximum of 312 weeks. Every disability may be reclassified if the character of the disability changes from temporary to permanent and/or the character of the disability changes from total to partial.[1]

The determination of the temporary or permanent character of a disability is typically made when a claimant reaches medical stabilization. This Court has stated that temporary disability benefits "are intended to compensate a [worker] during the period of healing and until he is able to return to work...." *Intermountain Health Care, Inc. v. Ortega,* 562 P.2d 617, 619–20 (Utah 1977) (footnote omitted), *superceded on other grounds* by statute and rule as stated in *Second Injury Fund v. Streator Chevrolet,* 709 P.2d 1176 (Utah 1985). In *Entwistle v. Wilkins,* we indicated that total temporary benefits are to continue "until [the claimant's] condition has *stabilized.*" 626 P.2d at 497 (emphasis added). Stabilization means that the period of healing has ended and the condition of the claimant will not materially improve. Once healing has ended, the permanent nature of the claimant's disability can be assessed and benefits awarded accordingly.[2] Once a claimant reaches medical stabilization, the claimant is moved from temporary to permanent status and he is no longer eligible for temporary benefits. Thus, the

---

1. There are four categories of disability, each controlled by a separate statutory provision. Those categories and the statutory provisions that govern them are: temporary total disability (U.C.A., 1953, § 35–1–65); temporary partial disability (U.C.A., 1953, § 35–1–65.1); permanent total disability (U.C.A., 1953, § 35–1–67); and permanent partial disability (U.C.A., 1953, § 35–1–66).

2. Once a disability is recognized as permanent, the claimant is eligible for either permanent total benefits pursuant to U.C.A., 1953, § 35–1–67 or permanent partial benefits pursuant to U.C.A., 1953, § 35–1–66. Where a claimant's condition is permanent and total, section 35–1–67 requires that the division of vocational rehabilitation find that the employee cannot be rehabilitated before the Commission can award permanent total disability benefits. *See Marshall v. Industrial Commission,* 681 P.2d 208, 211 (Utah 1984) (findings on employability required for permanent total disability). Permanent *partial* disability benefits, however, are paid according to a schedule that awards benefits solely upon loss of function, not loss of employability. *See Silver Kings Coalition Mines v. Industrial Commission,* 92 Utah 511, 519, 69 P.2d 608, 613 (1937). The relationship between temporary total disability and permanent partial disability was explained in the dissent in *Caillet v. Industrial Commission,* 90 Utah 8, 58 P.2d 760 (1936):

> Temporary total disability is founded on actual disability. Permanent partial [disability] is founded theoretically on loss of earning ability, but is absolute in law whether loss of earning ability is actually suffered or not. The law presumes the loss of earning power.... The vocational factor is not an element in the loss of bodily function [upon which permanent partial disability benefits are premised].

*Id.* at 15–16, 58 P.2d at 763 (Wolfe, J., dissenting) (citations omitted). Thus, the Commission is not required to make findings of ability to work when, as in this case, it makes an award for permanent partial disability.

statutes imply that at some point a claimant's disability ceases to be temporary and should be recognized as permanent. To accept the claimant's argument would require that all claimants who are unable to return to their prior employment would receive temporary total benefits for the entire 312-week statutory period. That result is inconsistent with a statutory structure which provides for both temporary and permanent benefits.

We hold that the Commission may reclassify a temporary disability when, after receiving medical evidence, it finds that the healing period has ended and the claimant's condition has stabilized. Identifying when the healing period has ended does not require a finding of ability to work; stabilization is strictly a medical question that is appropriately decided on the basis of medical evidence. Therefore, the Commission did not err in terminating temporary total benefits in this case. The medical panel concluded that the claimant's condition had stabilized on August 23, 1981, and that further treatment would not improve his condition. That finding was adopted by the administrative law judge and the Commission and is adequately supported by substantial evidence. "The extent and the duration of an employee's disability are questions of fact to be determined by the Commission." *Entwistle v. Wilkins*, 626 P.2d at 498 (footnote omitted). Since there is substantial evidence to support the Commission's findings of stabilization, its order will not be disturbed.

The claimant next argues that stopping the payment of temporary total benefits upon medical stabilization creates a "gap" that leaves him uncompensated between the time total temporary benefits are terminated and the time permanent partial benefits are received. The claimant argues that the decisions in *Baksalary v. Smith*, 579 F.Supp. 218 (E.D.Penn.1984), *appeal dismissed sub. nom. Allstate Insurance Co. v. Baksalary*, —— U.S. ——, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985), and *Auxier v. Woodward State Hospital School*, Iowa, 266 N.W.2d 139, *cert. denied*, 439 U.S. 930, 99 S.Ct. 319, 58 L.Ed.2d 324 (1978), hold that such a gap in the receipt of benefits violates constitutional due process. These cases are inapposite since they turn on the absence of a statutory requirement for notice and hearing before benefits are terminated. Utah's statutory scheme specifically provides for notice and a hearing. *See* U.C.A., 1953, § 35–1–82.56 (Supp.1985) (Workers' Compensation notice provision); U.C.A., 1953, § 35–1–82.51 (general hearing provision). While we recognize that the operation of the statute may leave the claimant with a limited amount of benefits during this gap in time, the problem is not a due process one, and we believe it must be solved by the legislature. *See Douglass v. Gresen Manufacturing Co.*, 300 Minn. 82, 217 N.W.2d 846, 847 (1974).

The next issue is whether the administrative law judge abused his discretion by failing to have the medical panel psychiatrist read the report of the claimant's psychiatrist, Dr. Egan. The claimant argues that the medical panel psychiatrist, Dr. Tedrow, might have given the claimant a higher disability rating if he had reviewed the report of the claimant's psychiatrist. We find that there was no error.

The report of Dr. Egan was received into evidence and considered by the administrative law judge. In his final order, the judge made it clear that he considered the report before making his final ruling. The administrative law judge is the finder of fact. The discrepancy between Dr. Tedrow's rating of 10 percent psychological impairment and Dr. Egan's rating of 20 percent impairment was simply a conflict between expert witnesses. In such a case, the administrative law judge properly exercised his authority to decide that question after reviewing the evidence from both sides.

Lastly, the claimant argues that the administrative law judge abused his discretion in not scheduling a hearing regarding the claimant's left shoulder injury. He contends that the administrative law judge

should have reopened the hearing to receive testimony from and rule on the credibility of prospective witnesses regarding the left shoulder injury. We agree.

The administrative law judge denied the claimant's motion for a continuance at the May 12, 1982 hearing to expedite the case, but he agreed to permit the claimant to supplement the record if necessary. The judge, however, did not admit into evidence the letters later submitted by the claimant from co-workers and a treating chiropractor supporting the left shoulder claim. Without this evidence, the judge never had the opportunity to rule on the credibility of those statements. This occurred despite the fact that the Chairman of the Medical Panel stated that testimony from credible witnesses regarding a contemporaneous injury to the left shoulder would have affected his opinion; such evidence was, therefore, material. Furthermore, the administrative law judge acknowleged his obligation to rule on the credibility of those statements.

Although the administrative law judge forwarded the letters from prospective witnesses to the medical panel for its consideration, it appears that the panel itself determined that those statements were not credible. The determination of credibility is the sole province of the fact finder, not expert witnesses. *See Baldwin v. Vantage Corp.,* 676 P.2d 413, 417 (Utah 1984). The administrative law judge abused his discretion by failing to reopen the case and rule on the credibility of the statements of witnesses regarding the left shoulder injury.

Therefore, we remand this case for further findings of fact on how the left shoulder injury relates to the claimant's disability. In all other respects, the decision of the Commission is affirmed.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

HOWE, Justice: (concurring).

I concur with the understanding that nothing in the majority opinion precludes the claimant from seeking permanent total disability benefits if his impairment prevents him from returning to work as a carpenter or to do other meaningful work. The medical panel rated the plaintiff's disability at 15% on the basis of their opinion that he should be "able to do carpentry work below the level of his shoulders." Other expert opinion was adduced that the claimant was employable but may have to be retrained in a new line of work. If these predictions prove to be erroneous, as the claimant so stoutly maintains, it would seem that he would be entitled to apply for a higher percentage of permanent partial benefits or perhaps even permanent total benefits. However, as the majority opinion correctly holds, he is not entitled to temporary total benefits after his medical condition stabilized.

The claimant complains of a gap in time between the termination of temporary benefits and the commencement of permanent benefits. In most cases coming before this Court, there has been no such gap and our statutes do not contemplate that there should necessarily be any gap. Gaps usually occur when the entitlement to permanent benefits is contested by the employer or his insurer, and a hearing must be held to determine the claimant's eligibility for permanent benefits.