**PACIFIC INDEMNITY COMPANY,**
Appellant,

v.

**Charles C. ANDERSON, Appellee.**

**No. 15865.**

Court of Civil Appeals of Texas.

Dallas.

Sept. 29, 1961.

Strasburger, Price, Kelton, Miller & Martin, Hobert Price, Dallas, for appellant.

Wilson & Menaker, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Charles C. Anderson brought this Workmen's Compensation suit for partial loss of the use of his right foot due to an injury sustained May 29, 1957 while he was an employee of Temco Aircraft Corporation. A jury returned a verdict of temporary partial disability of 35% for a period of 137 weeks. Inasmuch as Art. 8306, § 12, Vernon's Ann.Civ.St. provides compensation for a maximum period of 125 weeks for the loss of a foot judgment was entered for compensation for only 125 weeks.

In its first two points on appeal appellant Pacific Indemnity Company charges error on the part of the trial court in refusing to hold (1) that the jury's verdict is contrary to the undisputed evidence, and (2) that there is insufficient evidence to sustain the jury's verdict. Both points are without merit.

We here present a résumé of appellee's testimony bearing on the above two points: On the occasion of his injury appellee was standing on a makeshift scaffold which consisted of a box three feet tall with a board across it. The scaffold collapsed and appellee fell to a concrete floor, fracturing his ankle. He was taken to a company doctor who put a cast on the ankle and leg below the knee. The cast was not well made. It broke the next day. The company doctor then put on a heavier cast. This cast pulled appellee's foot "sideways". It had to be removed because it was rubbing appellee's foot and leg. Appellee was taken to another doctor, who examined him but did not treat him.

At the time of his injury appellee was an aircraft painter using a spray gun to paint an F38 wing. He had to stand, sometimes on tiptoe, while doing his regular job. He was proud of his regular job, for he had been selected because of his ability.

For about a week after his injury he went back to his regular job. Then they took him off his job and gave him an assignment

where he could sit at a table while working. He was unable to use his right foot on his regular job. He has never been put back on his regular job. He does no scaffold work at all now. Most of his work on his regular job was scaffold work.

At the time of the trial in May 1960 appellee was still bothered by his foot. On his present job he is on his feet about 75% of the time. When he stands an excessive time his foot feels somewhat like a sprained ankle; it feels like his heel is twisted to the left; constant walking on it or standing on it will cause the pain to start and it will swell. Sometimes he will sit down, take off his shoe, and rub his foot. The quantity, though not the quality of his work has been adversely affected.

Appellee further testified that there has not been any progress in the condition of his foot. Before his injury he played in a softball league and in a bowling league, kept a garden as a hobby and kept his yard in trim. He has had to give up all of these activities.

A fellow employee testified that appellee limps, seems to be in pain at times, sometimes props his foot on a rag, massages his foot, and isn't as fast at his work as he used to be.

Though earning capacity is not an issue in this case, there is evidence in the record that appellee has not suffered a deduction in his hourly rate of pay. In fact he has received two raises in pay. However, his annual earnings have dropped from about $6,000 per year to $4,627 per year due to the fact that he had a lot of overtime work on his regular job before his injury, but has not had overtime work on the jobs to which he has been assigned since his injury.

Appellant's first two points on appeal are overruled.

In its third and fourth points appellant complains of the alleged error of the trial court (3) in permitting appellee Ander-

son to testify that his supervisor had complained of his work subsequent to his injury and had transferred him from his regular job to other work, to which testimony appellant had objected on the ground that it was hearsay; and (4) in permitting appellee's witness Russell, a fellow employee, to testify that the supervisor had pulled appellee off his job, to which testimony appellant had objected on the ground that it was hearsay.

In this connection we quote from appellee's testimony:

"Q. (By Mr. Wilson) Now, Mr. Anderson, was any complaint made about the character of your work on that wing that you are talking about, from which you were transferred, was any complaint made by anyone in a position of authority or supervision over you, at that time?

"Mr. Newberry. I object to that as calling for hearsay evidence, the people not subject to cross examination. * *

"Mr. Wilson. Just answer whether or not a complaint was made.

"The Court. Just yes or no. * * A. Was a complaint made? Yes.

"Q. All right, now, by whom was that complaint made? A. By the supervision. (sic)

"Q. And specifically who, do you recall? A. The particular supervisor at that time was named Archie Clark. * * *

"Q. Now, what reason did he give you for transferring you off that job?

"Mr. Newberry. Same objection.

"The Court. I will sustain that objection as being hearsay.

"Mr. Wilson. Note our exception.

"Mr. Newberry. And I ask the Court to instruct the jury to disregard this line of testimony.

"The Court. Well, he hasn't made any answer to it."

We quote from Russell's testimony:

"Q. All right now, will you tell the jury what, if anything, you have observed about his condition since he got hurt? A. Well I have noticed—noticed that he limps, and when he will step out of a car or something on his right foot, he will, it will give on him, and he will grunt, and I will ask him what is wrong, and he said his foot give on him.

"Q. All right. A. And they taken him off right after me and him were transferred from Grand Prairie to the Garland Plant, they pulled him off—

"Mr. Newberry. We object to that as calling for hearsay evidence, Your Honor; he is talking about some other people who are not subject to cross examination here.

"The Court. I will overrule the objection.

"Q. (By Mr. Wilson). You say they pulled him off of the job after he got transferred to Garland? A. They pulled him off, and said he wasn't fast enough.

"The Court. Now, wait a minute, I will sustain the objection to that.

"Mr. Wilson. No, don't say what anybody else said.

"The Court. And I will instruct the jury not to consider what they said, it is hearsay.

"Q. (by Mr. Wilson). All right, without saying what they said—

"Mr. Newberry. Your Honor, I am also objecting to the fact that he is trying to get a conclusion or opinion by somebody else before the jury in an indirect manner, and they are not subject to any cross examination.

"The Court. I will overrule that objection.

"Mr. Newberry. Note my exception."

Does the above quoted testimony show that the court committed reversible error in permitting hearsay testimony? Plainly it does not. We so hold for three reasons: (1) the court sustained appellant's objections when the witnesses undertook to testify what the supervisor said; (2) similar testimony had earlier been elicited without objection to the effect that appellee had been "pulled off" his regular job and transferred to another job (which testimony need not be quoted); and (3) we cannot in truth say that the admission of the testimony about appellee's being "pulled off" his job (even if we were to hold it was error) was calculated to cause and probably did cause an improper verdict. Rule 434. Appellant's third and fourth points are overruled.

■ In its fifth and sixth points appellant asserts that the trial court erred (5) in substituting corrected Special Issue No. 1 for the original Special Issue No. 1; and (6) in overruling appellant's objection to such substitution.

The original Special Issue No. 1 was as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that C. C. Anderson has or will suffer any partial loss of the use of his right foot as a result of the injury to said foot on May 29, 1957?"

After due deliberation the jury returned a verdict answering "no" to the above issue. However it answered other issues as follows: (2) the partial disability was temporary; (3) the partial disability covered a period of 137 weeks; and (4) the percentage of such disability was 35%. Thereupon the trial judge, by express agreement of counsel, orally called the jury's

attention to the obvious conflict between their answers to Special Issue No. 1 and the other issues; and instructed the jury to retire and further deliberate in order to correct the conflict.

The jury again retired and thereafter sent a note to the judge as follows:

"Your Honor: Does the use of the word 'has' in Special Issue Number 1 mean 'has had in the past' or 'has now'. Signed 'Foreman.'"

It was then that the court submitted a corrected Special Issue No. 1 in substitution of the original Special Issue No. 1. The corrected charge, including a corrected Special Issue No. 1, and the jury's answers thereto was as follows:

"Members Of The Jury

"Special Issue No. 1 of the Court's Charge is changed to read as follows:

"Do you find from a preponderance of the evidence that C. C. Anderson sustained any partial loss of the use of the right foot as a result of the injury to the said foot on May 29, 1957?

"Answer "yes" or "no".

"Answer: Yes.

"/s/ Paul Swadek, Jr. Foreman

"I give you this corrected issue as a part of the Court's Main Charge and ask that you answer the same under the same instructions as are contained in the Court's Main Charge.

"/s/ Claude Williams
Judge."

The court after submitting the corrected charge offered counsel an opportunity to present further jury argument. Counsel declined.

We see no error in the action of the Court. It is proper for the court to point out a conflict in the jury verdict and retire the jury for further deliberation.

Traders & General Ins. Co. v. Carlile, 138 Tex. 523, 161 S.W.2d 484; Burnett v. Rutledge, Tex.Civ.App., 284 S.W.2d 944. The court may correct and modify the charge. Cockrell v. Egger, Tex.Civ.App., 99 S.W. 568; Goode v. Ramey, Tex.Civ. App., 48 S.W.2d 719, 722; Rule 286 T.R.C.P. Appellant's fifth and sixth points are overruled.

The judgment of the trial court is affirmed.

WILLIAMS, J., not sitting.