GULF INSURANCE COMPANY, Appellant,

v.

James GIBBS, Appellee.

No. 16611.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 5, 1976.

Rehearing Denied March 4, 1976.

Boswell, O'Toole, Davis & Pickering, Michael Phillips, Mark T. Price, Houston, for appellant.

Stovall & Simmons, John Somyak, Houston, for appellee.

EVANS, Justice.

A workman's compensation case.

The trial court awarded appellee, James Gibbs, the sum of $22,441.73 for compensation benefits and $170.00 for past unpaid medical expenses based upon the jury's findings of total and permanent incapacity. Appellant, Gulf Insurance Company, brings this appeal.

Appellant's first six points of error attack the legal and factual sufficiency of the evidence to support the jury's findings on the issues of total and permanent incapacity. In reviewing the "no evidence" points we have considered only the evidence and inferences therefrom which support such findings, and in reviewing the factual insufficiency points we have considered all of the evidence.

Appellee, James Gibbs, was 60 years old and had gone to school for only one year. He was unable to read or write. He had held jobs working on a farm, cutting railroad cross-ties, sawing blocks at a saw mill, digging septic tanks, putting in sewer lines, and carrying pipes and bathtubs for plumbing companies.

The accident occurred on September 6, 1973. It was stipulated that Gibbs sustained an accidental injury in the course and scope of his employment. At the time of the accident Gibbs was carrying plumbing materials up a ladder to the second floor of a construction site. He fell from the ladder at the second story level, landing on his right side.

The morning following the accident Gibbs' wife transported him to Ben Taub Hospital for examination and treatment. He was told that two of his ribs were cracked and was advised not to go back to work for six weeks. He made a second trip to Ben Taub for x-rays and pain pills, but thereafter stopped going because he couldn't pay the hospital bills. Gibbs testified that following the accident he had pain in his side, his arm, neck, chest and back and that he had chills. At the time of his testimony, he had pain in his side, arm and lower part of his back, "around my belt."

Gibbs further testified that there were certain things which he had been able to do before the accident but could not do afterwards. He could no longer dig and he could not lift or carry heavy items. His attempts to work again as a plumber's helper have failed because he gets tired and weak and can't continue through the day. He has been doing some light work about three days a week for a man named Luther Brown. This job consists of picking up trash and sweeping but does not entail any heavy carrying or lifting. He can only work about six or seven hours a day.

Luther Brown testified that Gibbs works for him three or four days a month cleaning inside apartments and that the job did not entail any lifting, stooping, carrying or digging. He said Gibbs does some sweeping and acts as a watchman. Brown did not believe that Gibbs could put in a full 40 hour week.

Mrs. Gibbs testified that her husband was constantly complaining about pain in his neck, lower back, right side and right arm and that since the accident he had had

trouble with his memory. She gives her husband a rubdown with ointment and puts a heat pad on him about two or three times a week. Her husband has not been able to do his gardening or help with many of the chores since the accident. Although he likes to fish he no longer does so because of the pain in his neck.

Gibbs sustained a neck injury in a car wreck about 9 years prior to the accident but testified he had recovered from that injury.

Dr. Otis Thomas, a chiropractor, called as a witness for Gibbs, testified that he first examined Gibbs on June 5, 1974. At that time Gibbs complained about pain in his neck, right shoulder, right arm and mid-back. X-rays taken of his cervical spine showed that the disc space between his 5th and 6th cervical vertebrae had been compressed. This narrowing of space, termed discogenic spondylosis, caused loss of feeling in Gibbs' right arm. When such condition involves only one level of the spine, it is thought to be caused from a trauma or injury, rather than from degenerative age. The compression of the disc space could have been caused by the fall or by the auto accident; if the condition had been pre-existing the fall could have aggravated the condition. The condition will not heal itself and is permanent. Based upon an x-ray of the upper part of Gibbs' thoracic spine, Dr. Thomas testified that vertebrae processes were rotated beyond their normal limits. He also stated there was some rotation in the lower spine lumbar 1 and lumbar 2. This could have resulted in irritation of the nerve root. There were also lippings and spurrings on the lower spine which indicated that a lot of stress had been placed upon the spine over the years. A fall from a height of two floors could have aggravated these conditions.

It was Dr. Thomas' opinion that Gibbs would have difficulty doing any kind of work that required heavy type lifting, bending, digging or strenuous activities and that his condition was either caused or aggravated by the injuries sustained in the fall and that such condition is permanent. Dr. Thomas had examined appellee on other occasions, the last occasion being March 27, 1975, a week prior to trial.

Dr. William Hand, an orthopedic surgeon called as a witness for appellant, testified that he examined Gibbs on February 26, 1974. He found Gibbs' neck had a full range of motion; there was no tenderness when he palpated the cervical spine; the shoulders had a full range of motion; the reflexes in both arms were the same; there was nothing unusual or abnormal about the muscle strength in either arm. Gibbs had complained about pain in the neck and the upper part of the back and had also stated that his right arm had been paralyzed at one time, but that "it had gotten a great deal better recently." No complaints were made to Dr. Hand about the lower part of his back and therefore no x-rays were taken of the lumbar spine. X-rays taken of the cervical spine showed the space between the 5th and 6th vertebrae was a little bit narrow compared to the ones above and below. X-rays of the thoracic spine were normal and did not indicate recent injury. There was no indication of nerve entrapment in either the thoracic or the cervical area.

Dr. Hand was of the opinion that appellee could do the usual tasks of workmen such as bending, stooping or lifting. On cross-examination he admitted that if a man had the beginning of a degenerative disc change as Gibbs had, a trauma might aggravate such condition and that a severe fall could bring on an acceleration or aggravation of a lipping and spurring condition that had preexisted. Dr. Hand did not examine the condition of Gibbs' lumbar spine since Gibbs had made no mention of pain referable to that area. Gibbs testified that the lower part of his back did not begin hurting until two weeks after he went to see Dr. Hand. Dr. Hand had not examined Gibbs since February 1974 and did not know whether his condition had improved or deteriorated.

The term "total incapacity" implies a disability to perform the usual tasks

of a workman and not merely the usual tasks of any particular one trade or occupation. *Texas Employers' Ins. Ass'n v. Mallard,* 143 Tex. 77, 182 S.W.2d 1000, 1001 (1944); *Texas Employers Ins. Ass'n v. Hawkins,* 369 S.W.2d 305, 307 (Tex.1963). A person's disability is total within the meaning of the Compensation Act if he can no longer secure and hold employment for physical labor such as he was required to do prior to his injury. It does not mean that he must be wholly unable to do any work at all. *Traders & General Ins. Co. v. Collins,* 179 S.W.2d 525, 529 (Tex.Civ.App.—Galveston, 1944, writ ref'd w. o. m.); *Aetna Life Ins. Co. v. Bulgier,* 19 S.W.2d 821, 824 (Tex.Civ.App.—Dallas, 1929, writ ref'd). While there was testimony indicating that Gibbs could perform some kinds of manual work, there was also testimony that he was unable to perform full-time physical labor of the type he had been doing prior to his injury. The jury was entitled to believe this testimony and to reject testimony to the contrary. The jury was properly charged to determine whether the injury was "a producing cause" of any total incapacity and that the term "injury" included any aggravation of a pre-existing condition. *Texas Indemnity Ins. Co. v. Staggs,* 134 Tex. 318, 134 S.W.2d 1026, 1028 (1940). We hold the evidence to be legally sufficient to support the jury's findings of total and permanent incapacity and that such findings are not against the great weight and preponderance of the evidence. Appellant's first six points of error are denied.

In its points of error seven through eleven appellant contends the trial court erred in denying its motion for new trial on grounds relating to improper instructions and communications between the court and the jury which appellant asserts constituted prejudicial error.

Appellant's complaint under these points arises from a clerical error of the court in submitting its written charge to the jury. Through inadvertence, a printed page of the charge, used in cases requiring only six person juries, was inserted in the court's charge. This page instructed the jury that a verdict could be rendered on the vote of "five" or more members of the jury. After the jury retired with such written instructions and had deliberated upon the evidence, it was announced that the jury had reached a verdict and the following ensued:

"THE COURT: Ladies and gentlemen of the jury, have you reached a verdict?

"THE FOREMAN: We have.

"THE COURT: Please give the answer sheet to the bailiff and I will read the question number and the answer.

"Question No. 1 is answered 'Yes.'

"The beginning date of any total incapacity is 'September 6, 1973.'

"One B is answered 'Permanent.'

"Then, there is a 'five' beside the 'permanent.' What is the five for?

"THE FOREMAN: That is what it should be according to the rules set forth, that if five concurred—

"THE COURT: No. If ten concurred.

"THE FOREMAN: No. Back in the instructions it says, 'five.'

"THE COURT: Art?

"We gave you the wrong instruction page. If any ten of you agree on a twelve-man jury, it should be. I'm sorry we did not catch this as we read it. This is the instruction page for a six-man jury which requires the concurrence of five. We have a twelve-man jury which requires the concurrence of ten.

"THE FOREMAN: I didn't read that. Is that on there?

"THE COURT: It is erroneously given you. We have a page which we use for a six-man jury and we have a page which we use for a twelve-man jury. We gave you the page which we use for a six-man jury instead of the page for a twelve-man jury; so, the verdict has to be arrived at by the concurrence of ten of you.

"THE FOREMAN: Okay.

"THE COURT: Ladies and gentlemen, obviously you have not finished your deliberations, then.

"THE FOREMAN: We need to go back.

"THE COURT: All right. Do you wish to go back and deliberate tonight, or do you wish to come back in the morning?

"Why don't you retire to the jury deliberation room and inform us of what you are going to do.

"Retire now to the jury deliberation room and decide what you are going to do and then let us know.

"THE FOREMAN: Do we need that back?

"THE COURT: We will give it to you in just a second. The bailiff will give it to you.

"I will take the liberty, with counsel's permission, of changing the 'five' as used in instruction six to 'ten?'

"MR. SOMYAK: Yes, sir.

"MR. PHILLIPS: That is agreed, Your Honor."

The jury then retired to deliberate upon the corrected charge and appellant moved for mistrial on the grounds that the jury had been improperly charged. While this motion was being presented the bailiff announced to the court that the jury had expressed the wish to finish that evening and wanted to know what to do about their cars. The court suggested that the jury be advised that they take a break in their deliberations. After further deliberation the jury returned a verdict into court indicating that their vote was a 10 to 2 verdict.

The main thrust of appellant's complaint is that prior to the submission of the corrected instructions, the court only instructed the jury that the charge should read that the verdict must be upon the agreement of "any" ten of the jurors, but failed to instruct that the "same" ten or more must agree upon all of the answers made and to the entire verdict. It argues that such oral advice to the jury not only contradicted the

"corrected" charge but also violated the provisions of Rules 226a and 292, Texas Rules of Civil Procedure. Appellant argues that it was not given adequate opportunity to object to the oral instructions given to the jury, and that by the time the corrected written instructions were given "the damage had already been done." It contends that the oral statements made by the court to the jury constituted comments on the weight of the evidence which resulted in prejudice to it.

■ After a cause has been submitted to the jury additional instructions may be given through careful adherence to the provisions of Rules 285 and 286, T.R.C.P. *Eastex Wildlife Conservation Ass'n v. Jasper, et al., County Dog & Wildlife Protective Ass'n*, 450 S.W.2d 904 (Tex.Civ.App.—Beaumont, 1970, ref'd n. r. e.). Such additional instructions may properly be utilized to correct an incorrect charge earlier given, even after the jury has commenced its deliberations. *Pacific Indemnity Co. v. Anderson*, 350 S.W.2d 360, 364 (Tex.Civ.App.—Dallas, 1961, no writ). The proposed additional instructions should first be submitted to the respective parties or their attorneys for inspection and a reasonable time given in which to examine and present objections thereto. Rule 272, T.R.C.P.

■ In the present case appellant does not contend that the additional instructions were erroneous; nor does it argue that the manner in which the court corrected the error in the earlier charge was improper. Indeed, it expressly agreed to the method suggested by the trial court for making the correction. The additional written instructions superseded the oral remarks of the trial court and specifically informed the jury that the "same ten or more" jurors "must agree upon all of the answers made and to the entire verdict." There is no indication that the jury was misled by the oral remarks made by the court prior to the submission of the additional instructions and, on the contrary, the record reflects

that the jury understood and strictly followed the court's corrected written instructions. We perceive no harm to appellant resulting from the court's remarks nor from the manner of submission of the corrected charge.

Appellant also contends that there were improper communications between the trial judge, the bailiff and the jury which pressured the jury into reaching a verdict to the prejudice and injury of appellant. It complains that the trial judge, after discovering that the jury had deliberated under an erroneous charge, commented on the weight of the evidence by its remark that the jury had obviously not finished its deliberation. In the context under which this remark was made, we do not find it resulted in prejudicial harm to appellant. In similar vein we see no error or harm in the court's suggestion that the jurors "take a break" to see about their cars, upon being advised that they wished to finish their deliberations that evening. Nor do we perceive harmful error in the court's telephone communication to the bailiff, which was then conveyed to the jury, that in view of the lateness of the hour they retire for the evening and return the next day. We regard these matters as incidental communications between the court's officers made with a view toward the expeditious progress of the trial and for the comfort and convenience of the jury. See McDonald, Texas Civil Practice, Vol. 3, Sec. 14.03.3—14.04, pp. 538, 545.

We have carefully considered the evidence adduced upon the hearing of the motion for mistrial and upon the trial of the case. Based upon the record as a whole it does not reasonably appear to us that injury probably resulted to appellant as a consequence of these matters. *Ross v. Texas Employers Ins. Ass'n,* 153 Tex. 276, 267 S.W.2d 541, 543 (1954); *Connor v. Heard & Heard, Inc.,* 242 S.W.2d 205, 207 (Tex.Civ. App.—San Antonio, 1951, writ ref'd n. r. e.); Rule 327, T.R.C.P. Appellant's points seven through eleven are denied.

Appellee contends that appellant should be assessed a penalty for filing a frivolous appeal pursuant to Rule 438, Texas Rules of Civil Procedure. We do not find that the appeal has been taken for delay or that there was no sufficient cause for taking such appeal. Appellee's request is denied.

Affirmed.