(No. 51121.—

FIRESTONE TIRE AND RUBBER COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Charles Gordon, Appellee).

*Opinion filed June 1, 1979.*

198

Henry D. Noetzel & Associates, of Peoria (Henry D. Noetzel, of counsel), for appellant.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Ralph Schroeder, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The claimant, Charles Gordon, sustained accidental injuries on March 23, 1976, arising out of and in the course of his employment with the respondent, Firestone Tire and Rubber Company (Firestone). Both parties sought review after an Industrial Commission arbitrator awarded compensation for 18 weeks of temporary total disability and a 15% permanent and complete loss of use of claimant's left arm. The Commission affirmed the arbitrator's allowance of temporary total disability, and increased the award for permanent and complete loss of use of the left arm to 45%. The circuit court of McLean County confirmed the Commission's decision, and Firestone appealed directly to this court (58 Ill. 2d R. 302(a)).

The respondent contends that the claimant is not entitled to temporary total compensation because he was capable of performing work of some character at the respondent's plant. It is contended too that the increase of the award from 15% to 45% is against the manifest weight of the evidence, since no further expert medical testimony was presented before the Commission.

The  claimant is a tire builder at a Firestone plant. On March 23, 1976, while attempting to remove the ply from a tire liner, he "gave it a jerk" and struck his left elbow on a shelf. Two days later, still suffering from a painful and swollen elbow, he visited the plant physician, who advised him to continue his regular work and report back in two weeks. During that period the claimant worked as a tire builder. He did visit the company nurse, who fashioned a pad to protect his elbow against bumping. On April 12, 1976, the claimant again was examined by the company doctor, who advised him to continue at work. The claimant testified that his elbow's condition had become aggravated and that he thought "something should be done." The doctor's response was that he would perform

surgery on his elbow at the end of the week.

On April 16, 1976, the olecranon bursa on the claimant's left elbow was removed under a general anesthetic. The arm was not casted. The following day the claimant was discharged from the hospital, and he spent the weekend in bed, he testified. On Monday, he was driven to the doctor's office, and after changing the dressing on his elbow the doctor told the claimant that Firestone had informed him that the claimant was expected to return to work the following day at 7 a.m. He was to be given an assignment which would require the use of only one hand.

When the claimant arrived at the plant the next morning, he felt "lightheaded and rubber kneed" and his arm pained him. His stitches had not been removed and a drain had been placed at the surgical site. He was sent to a tool cage to make up plant component tags, using one arm. He sat there for a short time and then walked to the nurse's office, where he was given medication for pain. He returned to the tool cage but did no work. He felt ill and returned to the nurse, who arranged for transportation and sent him home.

The following day the employees of Firestone went on a strike, which did not end until August 30, 1976. The claimant, who is right-handed, testified that during the month of July he spent two days painting a house, while holding onto a ladder with his left hand. His left arm became swollen and painful and he had to apply hot packs to it. Attempts at weeding in his own yard during that period also resulted in considerable swelling of his arm.

On August 30, 1976, the claimant reported to the plant nurse and was again given the tagging assignment. His arm was still swollen and painful. The company doctor examined the claimant at the plant that afternoon, advised him he was to resume tire building in the morning, and instructed the nurse to watch the elbow for increased

swelling. The claimant returned to his former duties. The nurse examined his elbow twice daily for some time and instructed the claimant to soak it periodically while at work. The claimant testified at the hearings before the arbitrator and the Commission that there still was pain, swelling and drainage at the surgical site.

The claimant's examining physician, Dr. Gordon Shultz, an orthopedic surgeon, testified at the hearing before the arbitrator. He was of the opinion that the claimant's arm should have been casted at the time of the surgical procedure to make it immobile so as to promote healing. This was an accepted medical procedure, he said, although many times similar operations are performed without subsequent casting. He stated that the claimant had bursitis of the left elbow and a "rather large" fractured spur at the surgical site which would probably necessitate further surgery. He believed the spur to be a preexisting condition, the fracture of which could have been caused by the claimant's accident, and he testified that the accident might have or could have aggravated a preexisting condition. He said that the swelling and drainage of the elbow constituted a chronic process which might "go on for a long time, maybe forever." Dr. Shultz conceded on cross-examination that it would be possible for a man under such circumstances to return to a job requiring the use of only one arm after 10 days, but it is not clear from the context of his statement whether he was referring to a person whose arm had been casted or one whose arm had not been casted.

The respondent's contention is that the award of 18 weeks temporary total disability was in error because a job had been provided for the claimant which was capable of being performed with one arm, although the machine involved is ordinarily operated with two arms. Firestone points out also that the claimant was able to paint a house for two days in July of 1976.

The only authority relied upon by the respondent is *Cebulski v. Industrial Com.* (1971), 48 Ill. 2d 289, in which this court affirmed a judgment of the circuit court confirming a decision of the Industrial Commission that the petitioner had failed to prove he sustained a permanent disability. There was no showing that the judgment of the circuit court was against the manifest weight of the evidence. Unlike the situation in *Cebulski,* an award for temporary total disability was here approved by the Industrial Commission and circuit court. The approval was not contrary to the manifest weight of the evidence. This is pertinent because "[t]he determination of disputed facts and the drawing of reasonable inferences from the evidence in workmen's compensation cases are the province of the Industrial Commision, and its findings regarding the nature and extent of a disability will not be set aside unless they are contrary to the manifest weight of the evidence." *Hiram Walker & Sons, Inc. v. Industrial Com.* (1978), 71 Ill. 2d 476, 479.

We consider that the record discloses ample evidence of swelling, drainage and pain to support the temporary total disability portion of the claimant's award. The testimony that the job of tagging could be performed with one arm was not sufficient to overcome the Commission's finding that the claimant's condition constituted temporary total disability for the weeks in question. Nor does the evidence that the claimant for two days was painting a house serve to bar the award for temporary total disability. In *J. M. Jones Co. v. Industrial Com.* (1978), 71 Ill. 2d 368, 373, we referred to our statement in *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 361-62, governing work during a period of total disability:

> "Evidence that the employee has been or is able to earn occasional wages or to perform certain useful services neither precludes a finding of total disability nor requires a finding of partial

disability. [Citations.] For the purposes of section 8(f) [section 19(b)], a person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists."

We do not find merit in the respondent's contention that the arbitrator's lesser award of 15% permanent loss of use should be reinstated because there was no further medical testimony at the hearing on review before the Commission and because the claimant offered no new claim of disability beyond that to which he had testified at the arbitator's hearing. Questions of fact are within the province of the Industrial Commission, "even where the Commission's findings differ from those of the arbitrator and no further evidence has been taken by the Commission." (*Scuderi v. Industrial Com.* (1978), 73 Ill. 2d 277, 281.) The Commission's decision was not contrary to the manifest weight of the evidence. For the reasons given, the judgment of the circuit court of McLean County is affirmed.

*Judgment affirmed.*