**ENTWISTLE COMPANY and Home Insurance Company, Plaintiffs,**

v.

**Jerry M. WILKINS and Industrial Commission of Utah, Defendants.**

**No. 16879.**

Supreme Court of Utah.

Feb. 26, 1981.

J. Kent Holland, Salt Lake City, for plaintiffs.

Paul R. Frischknecht, Manti, Robert B. Hansen and Frank V. Nelson, Salt Lake City, for defendants.

CROCKETT, Justice: *

Plaintiffs Entwistle Company and its insurer, Home Insurance Company, seek reversal of an order by the Industrial Commission which awarded temporary total disability compensation to the defendant Jerry Wilkins caused by an accidental injury suffered by him arising out of his driving a truck for plaintiff Entwistle.

Plaintiffs contend that after the defendant's injury and his subsequent termination of employment with plaintiff Entwistle, he performed work "of the same general character" during the period of time for which he was awarded the above compensation and that the award should not have been made.

The facts, as found by the Commission, are: The defendant, who is 55 years old, sold trailers and other types of recreational vehicles for plaintiff Entwistle. In that capacity, he regularly traveled throughout the western states contacting dealers. On April 15, 1977, near Portland, Oregon, his pickup truck and a trailer he was pulling were forced off the road and into a borrow pit by strong winds. To get back on the highway, the defendant had to unhitch the trailer. In doing so, he lost his balance, fell over and struck his back on some large rocks. This caused severe pain in his lower back and some numbness in his left leg. After a short rest, he was able to hook up the trailer and continue his trip.

The next day, the defendant informed his boss of the accident and indicated that,

---

* CROCKETT, J., wrote this opinion prior to his retirement.

although he was injured and the trailer was damaged, he would complete the sales trip as scheduled. A week later, however, he notified his boss that he was in so much pain that he would return home earlier than scheduled.

The defendant arrived home on April 27 and continued to experience pain in his lower back. The next day, he was examined by a doctor who referred him to an orthopedic specialist. For the next three weeks, the defendant underwent physical therapy. He returned to work on May 20. At that time, he restricted his duties to contacting dealers by telephone. Nevertheless, when he was unable to do that because of continuing pain, plaintiff Entwistle terminated his employment.

The defendant applied for disability compensation and, after a hearing, the matter was referred to a medical panel.[1] The panel reported that the defendant has a condition of intermittent pain in his lower back and numbness in his left thigh and foot and that it is aggravated when he stands or sits for extended periods of time. The panel's opinion is that the defendant was temporarily totally disabled from April 15, 1977, until January 1, 1978, that his condition had then stabilized, and that there was a ten percent permanent loss of body function as a result of the accident.

Based on the above facts, the administrative law judge entered an order, dated October 25, 1979, awarding the defendant temporary total disability compensation of "$169 per week from April 15, 1977, to January 1, 1978, for a total of 37 weeks, 3 days for the sum of $6,325.43."[2] The plaintiffs filed a motion for review of that order.

It is important to have in mind that the plaintiffs do not complain of the ten percent permanent partial disability award, but their attack is upon the temporary total disability award, and that is the problem we are dealing with.

On December 11, 1979, the Commission amended the October 25 order, noting that between April 15 and May 23, the defendant received his regular salary and, thus, was not entitled to temporary disability benefits during that time. Consequently, the Commission made the appropriate adjustment by reducing the award by five weeks and two days. Nevertheless, the plaintiffs have persisted in contending that no award at all for temporary total disability was justified.

The basis of plaintiff's argument is that after the defendant's employment with plaintiff Entwistle ended, he performed identical work for a camper shell manufacturing company owned by himself and his son. They point to evidence that, during the summer of 1977, the defendant made two or three sales trips for that company and delivered camper shells to dealers who sold the company's products. They say that this conclusively shows that the defendant was able to perform work of the same general nature as he had before the accident and, thus, was not eligible for the temporary total compensation which he received.

The purpose of temporary disability compensation is to provide income for an employee during the time of recuperation from his injury and until his condition has stabilized.[3] The question as to the degree of his disability on a temporary basis may be quite different than that question as to partial or total permanent disability. The law should not and does not encourage indolence by requiring that a man be completely idle in order to remain eligible for disability compensation. We have heretofore stated that:

> ... a workman may be found totally disabled if by reason of the disability resulting from his injury, he cannot perform work of the general character he was performing when injured, or any oth-

---

1. Pursuant to Sec. 35-1-77, U.C.A.1953.

2. The defendant was also awarded permanent partial disability compensation totaling $3,515.30.

3. *Granado v. Workmen's Comp. Appeals Bd.,* 71 Cal.Rptr. 678, 445 P.2d 294 (1968); *Taylor v. State Accident Ins. Fund,* 40 Or.App. 437, 595 P.2d 515 (1979); *Vetter v. Alaska Workmen's Comp. Bd.,* Alaska, 524 P.2d 264 (1974).

er work which a man of his capabilities may be able to do or to learn to do.[4] But common sense dictates that there is less reason to expect that a man will readjust to different work during a period of temporary disability than he would on the permanent basis.

As applied to the issue under consideration here, "total disability" does not mean a state of abject helplessness[5] or that the injured employee must be unable to do any work at all.[6] The fact that an injured employee may be able to do some kinds of tasks to earn occasional wages does not necessarily preclude a finding of total disability to perform the work or follow the occupation in which he was injured.[7] His temporary disability may be found to be total if he can no longer perform the duties of the character required in his occupation prior to his injury.[8]

The defendant testified that, because of the pain he was experiencing, he could not perform the work required of a salesman and that he was not trained for work in any other occupation. The sales trips he made were infrequent and of short duration, usually for only one day; and thus, not comparable to the extended traveling of his regular employment. He said that his involvement with the family business consisted primarily of visits to the plant to assist with making out payrolls or paying bills. He did not consider his participation to be of any substantial consequence. The fact that he did not remain completely idle, but spent some time in helping with the family business is not inconsistent with the finding that his injury temporarily prevented him from performing his usual line of work. Significantly, as to when the defendant was able to return to work in any capacity, the medical panel reported as follows:

The applicant was able to return to full-time work January 1, 1978. The members of the medical panel recognize that *this man was carrying out significant personal business a good part of the time . . .* and might by someone be considered during that time as being able to work part-time. *It is the opinion of the Panel, however, that he was substantially disabled for significant employment by another party during that period.* [All emphasis added.]

In considering the plaintiffs' attack upon the order made, we apply the principles which are established in such matters. The extent and the duration of an employee's disability are questions of fact to be determined by the Commission.[9] We review the evidence in the light most favorable to the Commission's findings,[10] and when there is substantial evidence to support the facts as found by the Commission, its order will not be disturbed.[11]

Affirmed. No costs awarded.

STEWART, and HOWE, JJ., concur.

4. *United Park City Mines Co. v. Prescott,* 15 Utah 2d 410, 393 P.2d 800, 801–802 (1964); *Morrison-Knudson Const. Co. v. Industrial Com'n.,* 18 Utah 2d 390, 424 P.2d 138 (1967).

5. *Thomas v. Industrial Com'n.,* 95 Utah 32, 79 P.2d 1 (1938). See *E. R. Moore Co. v. Industrial Com'n.,* 71 Ill.2d 353, 17 Ill.Dec. 207, 376 N.E.2d 206 (1978).

6. *Gulf Ins. Co. v. Gibbs,* Tex.Civ.App., 534 S.W.2d 720 (1976).

7. Larson, Workmen's Compensation, sec. 57.-12. See *United States Gypsum Co. v. Rauh,* Okl., 318 P.2d 864 (1957); *E. R. Moore Co. v. Industrial Com'n.,* supra, note 5; *Firestone Tire & Rubber Co. v. Industrial Com'n.,* 76 Ill.2d 197, 28 Ill.Dec. 548, 390 N.E.2d 907 (1979);

*Jones v. Arnold,* La.App., 371 So.2d 1258 (1979).

8. *Gulf Ins. Co. v. Gibbs,* supra, note 6.

9. *United Park City Mines Co. v. Prescott,* supra, note 4; *E. R. Moore Co. v. Industrial Com'n.,* supra, note 5.

10. Sec. 35–1–85, U.C.A.1953; *Vause v. Industrial Com'n.,* 17 Utah 2d 217, 407 P.2d 1006 (1965); *Duaine Brown Chevrolet Co. v. Industrial Com'n,* 29 Utah 2d 478, 511 P.2d 743 (1973); *Savage v. Industrial Com'n.,* Utah, 565 P.2d 782 (1977).

11. *Sanderson v. Industrial Com'n.,* 16 Utah 2d 348, 400 P.2d 756 (1965). That this rule also applies to the Commission's refusal to find

HALL, Justice (dissenting):

I of course agree that questions of fact are to be determined by the Commission. However, the record in this case reveals that none of the material facts are in dispute. The Commission was simply called upon to apply the law to those facts and thus determine whether defendant was totally disabled.

The services defendant performed for plaintiff Entwistle Company was the selling of trailers, which included sales trips to various dealers. The services he performed for himself and his son were sales of camper shells, which also included sales trips, although of lesser frequency and distance.

The legal test of total disability as announced by this Court in *United Park City Mines Company v. Prescott, et al.*,[1] is whether one can perform work of the *general character* he was performing when injured.

I am of the opinion that there is little distinction to be made between traveling for the purpose of making sales of *trailers* and performing like services in the sale of *camper shells.* Consequently, I find no substantial evidence in the record to support the conclusion of the Commission that defendant was *totally disabled.*

I would set aside the order of the Commission.

CROFT, District Judge (dissenting):

I concur in the dissent of Justice Hall that there is no substantial evidence in the record to support the conclusion of the Commission that defendant Wilkins was totally disabled following his accident of April 15, 1977, until January 1, 1978. I am satisfied that defendant was injured in his fall from the truck on April 15, 1977, with a resulting and recurring pain in his back in the weeks that followed. I am not satisfied that the injury resulted in any more than a temporary partial disability.

facts, see *Halvorson, Inc. v. Williams*, 19 Utah 2d 113, 426 P.2d 1019 (1967).

1. 15 Utah 2d 410, 393 P.2d 800 (1964).

1. Sec. 35–1–65(1), U.C.A.1953.

We are here dealing with the question as to whether the evidence presented to the Commission supports its finding of temporary total disability of Wilkins up to January 1, 1978.

Under our law, in case of temporary disability, the compensation provided for by statute is payable "so long as such disability is total."[1] I find no definition of "total disability" in our statutes. Whether an employee is totally disabled is an ultimate matter to be decided by the Commission.[2] The function of a medical panel is to give the Commission the benefit of its diagnosis relating to those matters within its expertise, and not to infringe upon the Commission's responsibility to decide the issue of total disability.[3]

What is "total disability"? I agree with Justice Crockett's statement that it does not mean a state of abject helplessness or that the injured employee must be unable to do any work at all. I do not agree that the test is met if the employee "can no longer perform the duties of a character required in his occupation prior to his injury."

99 C.J.S., Sec. 304(b), Workmen's Compensation, states that temporary total disability is the healing period or period during which "the claimant is unable to work and is totally disabled and recovery is reasonably expected." In *Caillet v. Industrial Commission of Utah*, 90 Utah 8, 58 P.2d 760 (1936), Justice Wolfe, in his dissenting opinion, said:

> Temporary total disability is founded on actual disability,

and further that total disability means

> disablement of the particular applicant to earn wages in the type of work (not just the particular work he did do) he was trained for or any other type of work

2. *Spencer v. Industrial Com'n*, 87 Utah 336, 40 P.2d 188 (1935).

3. *IGA Food Fair v. Martin*, Utah, 584 P.2d 828 (1978).

which a person of his mentality and attainments could do.

Justice Wolfe also stated that he did not think the doctors are competent to give testimony on whether an applicant is economically totally disabled.

It seems to me that in the case before this Court that is exactly what the medical panel did. In the quote from the medical panel report cited by Justice Crockett, it was stated that the panel recognized that defendant was carrying out significant personal business a good portion of the time, particularly following the fire (August 29, 1977), and undoubtedly some of the time prior to the fire, and might by someone be considered during that time as being able to work part-time, but that in the opinion of the panel, he was "substantially disabled" for significant employment by another party during that period. As was stated in *IGA Food Fair v. Martin* (supra), that impresses me as but "a gratuitous conclusion upon a matter of fact unrelated to its medical expertise."

Wilkins' activities before the fire noted by Justice Hall in his dissent involved traveling and making sales and deliveries of camper shells. This activity was terminated by the destruction of the business by fire, not by the pain defendant said he felt as he watched his business being destroyed by the uncontrollable flames. The examining physician's report on the pain felt after the fire was "recurrent back strain again today with the fire fighting and clearance of things."

The medical panel report recites that after the fire, and during September, October and November, Wilkins spent a good deal of time visiting bankers and doing other things trying to get back into business. No visits to the doctors occurred during those three months. A visit on December 30, 1977, to Dr. Pratt disclosed his problem then was "allergic rhinitis," which the dictionary[4] defines as an "inflammation of the nose or its mucous membrane." Dr. Pratt's

pencilled notation for that date also appears to state that his left leg was "becoming worse, muscle deterioration," yet the medical panel found his period of total disability ended the next day.

I search the medical records of the two treating physicians in vain for any suggestion that defendant was totally disabled. At most, one finds medication and a week or so of rest as the prescribed treatments. His activities following the loss of his employment until the end of 1977 as disclosed by the record falls far short of the "actual disability" test suggested by Justice Wolfe. Nor do I think the record sustains a finding that defendant could not "perform work of a general character he was performing when injured, or any other work which a man of his capabilities may be able to do or learn to do."[5]

I would reverse the Commission's order and remand the case for further proceedings to determine Wilkins' entitlement, if any, under Section 35–1–66 to relief for partial disability.

MAUGHAN, C. J., does not participate herein; CROFT, District Judge, sat.

---

**4.** Random House Dictionary of the English Language, The Unabridged Edition.

**5.** *Thomas v. Industrial Com'n*, see footnote 5 in Justice Crockett's opinion.